717 So.2d 1115 (1998)
Jean PIERRE, Petitioner,
v.
HANDI VAN, INC., and Humana Workers' Compensation Services, Respondents.
No. 98-1530.
District Court of Appeal of Florida, First District.
September 28, 1998.
*1116 B. Ellen Schnepper of Barbara E. Schnepper, P.A., Miami, for Petitioner.
Amy J. Ardman of Rigell, Leal & Ring, P.A., Fort Lauderdale, for Respondents.
ERVIN, Judge.
Appellant, Jean Pierre, filed a petition for writ of certiorari challenging the order of the judge of compensation claims (JCC) which permits the employer, Handi Van, Inc., and carrier, Humana Workers' Compensation Services (respectively, the E/C), to schedule an ex parte conference with an expert medical advisor (EMA). We have jurisdiction. Adelman Steel Corp. v. Winter, 610 So.2d 494 (Fla. 1st DCA 1992). Because section 440.13(4)(c), Florida Statutes (Supp.1994), authorizes ex parte conferences with health care providers and not with EMAs, we grant the petition and quash the order.
This is a case of first impression. Section 440.13(4)(c) provides:
It is the policy for the administration of the workers' compensation system that there be reasonable access to medical information by all parties to facilitate the self-executing features of the law. Notwithstanding the limitations in s. 455.241[[1]] and subject to the limitations in s. 381.004,[[2]] upon the request of the employer, the carrier, or the attorney for either of them, the medical records of an injured employee must be furnished to those persons and the medical condition of the injured employee must be discussed with those persons, if the records and the discussions are restricted to conditions relating to the workplace injury. Any such discussions may be held before or after the filing of a claim without the knowledge, consent, or presence of any other party or his agent or representative. A health care provider who willfully refuses to provide medical records or to discuss the medical condition of the injured employee, after a reasonable request is made for such information pursuant to this subsection, shall be subject by the division to one or more of the penalties set forth in paragraph (8)(b).
(Emphasis added) (footnotes added). The JCC concluded that Dr. Robert Butler, an EMA appointed by the JCC, was a "health care provider" subject to section 440.13(4)(c), and granted the E/C's request for an ex parte conference. This was error.
In reaching our decision, we note that the language in subsection (4)(c), permitting ex parte discussions between health care providers and the respective parties, was but one of several subsections added to section 440.13 at the special session of the 1993 Florida Legislature. See Ch. 93-415, § 17, at 98-111, Laws of Fla. In addition to the above subsection, the legislature amended section 440.13 by including within it subsections (5),(6),(7), (8) and (9), all of which in should be read in pari materia. See § 1.04, Fla. Stat. (1993). In applying this rule to the amended statute, we conclude that the legislature intended the added subsections to address chronologically the progression of a worker's injury from its initial occurrence through subsequent disputes.
Section 440.13, as amended, addresses the roles of three separate categories of physicians or practitioners placed within the amended act: health care providers, independent medical examiners (IMEs), and EMAs.[3] For example, subsection (4) outlines the obligations of health care providers to keep employers and carriers, as well as the division, informed regarding the claimant's medical status. Included therein is the provision at issue in this case, subsection (4)(c), which furthers the self-executing nature of the compensation *1117 system by ensuring that the E/C has ready access to medical information involving the claimant.
Continuing with this sequential order, we note further that subsection (5) provides assistance once a dispute has arisen between the claimant and the E/C regarding overutilization, medical benefits, compensability or disability. It authorizes either party to select an IME to examine the claimant and provide an opinion regarding such issues. Subsections (6), (7) and (8) address resolution of problems involving overutilization and billing errors and disputes. Subsection (9) finally permits either party or the JCC to seek an examination of the claimant by an EMA, who is intended to be completely neutral and to provide what is, in effect, a definitive opinion regarding the claimant's injuries in the event of disagreement between health care providers on the medical evidence, the claimant's need for additional treatment, or the claimant's ability to return to work. A presumption of correctness attaches to the EMA's opinion. See § 440.13(9)(c).[4] Because of the nearly conclusive effect of an EMA's opinion, the amended statute requires that the EMA selected not only be qualified to render the opinion, but also be impartial, a fact alluded to by this court's recent decision in Johns Eastern Co. v. Matta, 23 Fla. L. Weekly D1846, 717 So.2d 91 (Fla. 1st DCA 1998). See also § 440.13(9)(a).
Viewing subsection (4)(c) according to the logic and progression of the statute as a whole, it appears the legislature intended that the records and opinions of treating and examining physicians and other practitioners be freely available to E/Cs, and that claimants no longer enjoy the right to be present during discussions between E/Cs and those providers. Once disputes have arisen and ripened, however, requiring the assistance of EMAs, the case has become indisputably adversarial so that ex parte discussions with such experts are not appropriate. The procedure afforded for the selection of EMAs is thus a final resort for the resolution of medical disputes, and the experts so chosen should not be subject to even the "appearance of impropriety," which would result from private meetings with either party.
As we earlier observed, the disputed language at issue is found only in section 440.13(4)(c), generally pertaining to the requirement that health care providers inform E/Cs of treatment furnished to injured employees on forms furnished by the division. Such language was not repeated in any other subsection of section 440.13. In that the legislature has not clearly and expressly extended this language to EMAs, we conclude the JCC departed from the essential requirements of the law in allowing the E/C to conduct an ex parte conference with the EMA.
Accordingly, the petition for writ of certiorari is
GRANTED.
BOOTH and VAN NORTWICK, JJ., concur.
NOTES
[1] Chapter 455 pertains to the regulation of professions in general, and section 455.241 deals with the confidentiality of and patient access to medical records.
[2] Chapter 381 governs public health, and section 381.004 addresses HIV testing and the confidentiality thereof.
[3] We do not mean to suggest by the above enumeration that IMEs and EMAs do not fall within the general definition of health care providers. Clearly they do. See § 440.13(1)(i). It is rather our position, for the reasons stated infra, that the pertinent language of 440.13(4)(c) was not intended to extend to health care providers who are also selected as EMAs.
[4] This presumption was carried over from section 440.13(2)(j)3 a, Florida Statutes (1993). The former statute, however, did not use the term "expert medical advisor" in referring to the person selected by the JCC in the event of disagreement in the opinions of physicians, but rather "health care provider." Moreover, there was no requirement, as it exists in the present statute, that the provider be impartial.