756 So.2d 1037 (2000)
S & A PLUMBING and FCCI Mutual Insurance Co., Appellants,
v.
Michael KIMES, Appellee.
No. 1D98-118.
District Court of Appeal of Florida, First District.
March 31, 2000.
Rehearing Denied May 3, 2000.
*1038 Elliot B. Kula of Miller, Kagan, Rodriguez & Silver, P.A., West Palm Beach, for Appellants.
Jerold Feuer, Miami and Israel Abrams of North Miami Beach, for Appellee.
VAN NORTWICK, J.
In this workers' compensation appeal, S & A Plumbing and FCCI Mutual Insurance Company (jointly, the employer/carrier) appeal an order of the judge of compensation claims (JCC) which awards medical treatment for injuries to the neck and back of Michael Kimes, claimant and appellee. Kimes petitioned for such treatment following an industrial accident on December 21, 1990. Kimes cross-appeals, challenging (i) the denial of his request for surgery to his left ankle; and (ii) the admission into evidence of a letter summarizing the substance of a meeting between Kimes' treating physician and representatives of the employer/carrier's attorney held pursuant to section 440.13(4), Florida Statutes (Supp.1994), arguing that section 440.13(4)(c) is facially unconstitutional as violative of the privacy provisions of Article I, section 23 of the Florida Constitution. For the reasons that follow, we affirm all issues raised on the appeal and the cross-appeal.

Factual and Procedural Background
While working as a plumber, on December 21, 1990, Kimes slipped and fell injuring his right knee. This accident was accepted as compensable, and he was provided treatment. Despite treatment to the right knee, Kimes claimed to experience continued weakness in the right leg and fell numerous times after the industrial accident. Kimes has also claimed that because of the weakness in his right knee, more strain is put on his left leg and foot. Further, Kimes claimed that as a result of the numerous falls, he required treatment for neck and back injuries and petitioned for such treatment. The record reflects that Kimes had contracted polio as a child and as a result his left leg was 1 ¼ inches shorter than the right.
Kimes sought authorization for surgery to his left ankle, and, when such authorization was denied, he filed a claim for the ankle surgery on March 14, 1994. The employer/carrier argued that there was insufficient evidence of a causal connection between the 1990 workplace accident and the left ankle condition.
Prior to the hearing on the claim for ankle surgery, Kimes moved to suppress a letter which summarized a conference held on May 4, 1994, among Kimes' treating physician, Dr. Steven Bernstein, the carrier's adjustor and counsel for the employer/carrier. Neither Kimes nor his counsel were present at, or advised of, this conference, which was convened to discuss *1039 Kimes' ankle condition and its relation to the 1990 workplace accident. The contents of the letter were referenced extensively in a deposition of Bernstein taken on September 28, 1994, and the letter was attached to the deposition. In a hearing on December 2, 1994, Kimes sought to exclude Bernstein's deposition and the letter on the ground that he was not advised of the letter prior to the deposition and was hence "ambushed" by its use. The JCC denied Kimes' request to exclude the letter and deposition. Following a hearing on December 22, 1994, the JCC denied the claim for the left ankle surgery, based primarily on the testimony of Dr. Bernstein.[1] In the order on appeal, the JCC found that Dr. Bernstein had testified that it was medically necessary for Kimes to wear a leg brace, which Kimes refused to do, and that the failure to wear the brace "is the cause for the present need for surgery to his left ankle."
Kimes also sought treatment for injury to his neck and back. He claimed these injuries were causally related to the 1990 knee injury, because the neck and back injury occurred as a result of numerous falls which were caused by his right knee "giving out on him" on a frequent basis. Claimant's treating physician, Paul Chaplin, M.D., a board certified orthopedic surgeon, testified that a causal connection existed between the back and neck injuries and the frequent falling episodes attributable to claimant's poor right knee.
The employer/carrier argued below that Dr. Chaplin's testimony was not sufficient proof of a causal connection between the 1990 workplace accident and the neck and back injuries, since it was based primarily on the subjective history given by the claimant, and not upon objective medical findings. Further, the employer/carrier argued that claimant's history provided to Dr. Chaplin was incomplete, because claimant did not report that he previously injured his back in 1987 while lifting a water heater and received treatment for that injury from Dr. Randall Siller.
Following a hearing on November 12, 1997, the JCC found the neck and back injuries to be compensable, noting that Dr. Chaplin's testimony regarding causation was uncontradicted. The JCC explained:
Although Dr. Chaplin's knowledge of claimant's falls was by history alone, I choose to believe the claimant, especially since there was no evidence to the contrary and there was nothing in the claimant's entire testimony to lead me to a contrary conclusion.
The JCC noted that claimant had sustained a previous back injury and had received treatment, but disregarded that prior injury noting that it "was several years prior to claimant's compensable injury on December 21, 1990 and claimant recovered from [that injury] without incident."

Claim for Ankle Surgery
Kimes argues on cross-appeal that the JCC erred in denying the claim for ankle surgery, asserting that Dr. Bernstein did not testify that Kimes' failure to wear a brace was the only reason for surgery. Kimes contends that the medical testimony shows that the need for ankle surgery was attributable to a combination of the pre-existing polio condition, the extra-weight placed on the left foot because of the workplace accident to the right knee, and the failure to wear the leg brace. The use of the "major contributing cause" standard by the JCC was erroneous, argues Kimes, because such a standard was not the law in effect at the time of his industrial accident.
While the JCC does employ the phrase "major contributing cause" in his order of *1040 February 2, 1995, a reading of the order as a whole reflects that the JCC viewed Bernstein's testimony, the only expert testimony submitted regarding the injury to the left ankle, as failing to establish a sufficient causal connection between the need for immediate surgery and the industrial accident. This view of the evidence is supported by competent, substantial evidence in the record, and we therefore affirm the denial of the claim for surgery on the ankle.

Claim for Treatment to Neck and Back
The employer/carrier challenge the award of medical treatment to Kimes' neck and back, arguing that the JCC erred in accepting the testimony of Dr. Chaplin, who testified as to a causal connection between Kimes' neck and back condition and the industrial accident. The employer/carrier assert that Dr. Chaplin's opinion is not competent, since he was not aware that Kimes was treated, with medications such as Naprosyn, for a lumbar strain in late March and early April 1988 by Dr. Siller.
The JCC rejected this argument, as noted, explaining that the lumbar strain occurred several years before the workplace accident and had completely resolved itself prior to that accident. We find no basis to disturb the JCC's resolution of this issue. Dr. Chaplin testified, when advised of the prior lumbar strain, that such a prior injury would be significant if Kimes' back condition had not worsened after the fall on December 21, 1990. Dr. Siller's records indicate that the strain had been resolved in 1988, and Dr. Chaplin's own findings were not based upon Kimes' personal history exclusively, but upon objective findings as well. Thus, the cases cited by the employer/carrier, State, Div. Of Risk Management/Dep't of Highway Safety and Motor Vehicles v. Martin, 690 So.2d 651 (Fla. 1st DCA 1997), and Ullman v. City of Tampa Parks Dep't, 625 So.2d 868 (Fla. 1st DCA 1993), are distinguishable.

Constitutionality of Section 440.13(4)(c)
Kimes argues that, by authorizing ex parte communications between his treating physician, Dr. Bernstein, and representatives of the employer/carrier, section 440.13(4)(c), Florida Statutes (Supp. 1994), infringes upon the privacy rights of a petitioner for worker's compensation benefits. We find this argument to be without merit.
Section 440.13(4)(c) provides:
440.13 Medical services and supplies; penalty for violations; limitations....
(4) NOTICE OF TREATMENT TO CARRIER; FILING WITH DIVISION. 
. . .
(c) It is the policy for the administration of the workers' compensation system that there be reasonable access to medical information by all parties to facilitate the self-executing features of the law. Notwithstanding the limitations in s. 455.241 and subject to the limitations in s. 381.004, upon the request of the employer, the carrier, or the attorney for either of them, the medical records of an injured employee must be furnished to those persons and the medical condition of the injured employee must be discussed with those persons, if the records and the discussions are restricted to conditions relating to the work place injury. Any such discussions may be held before or after the filing of a claim without the knowledge, consent, or presence of any other party or his agent or representative. A health care provider who willfully refuses to provide medical records or to discuss the medical condition of the injured employee, after a reasonable request is made for such information pursuant to this subsection, shall be subject by the division to one or more of the penalties set forth in paragraph (8)(b).
In Pierre v. Handi Van, Inc., 717 So.2d 1115, 1117 (Fla. 1st DCA 1998), this court explained that, in enacting subsection (4)(c) to section 440.13,
the legislature intended that the records and opinions of treating and examining *1041 physicians and other practitioners be freely available to E/Cs, and that claimants no longer enjoy the right to be present during discussions between E/Cs and those providers.
We observed in Pierre that subsection (4)(c) "furthers the self-executing nature of the compensation system by ensuring that the E/C has ready access to medical information involving the claimant." Id. at 1116-1117. Reading subsection (4)(c) in pari materia with section 440.13 as a whole, we held that once a dispute has become sufficiently adversarial to require the appointment of an expert medical advisor (EMA) under section 440.13(9)(c), ex parte discussions may not be held between an expert and the employer/carrier. Pierre, 717 So.2d at 1117.
The workers' compensation system is clearly intended to be self-executing, with the resort to adversarial proceedings being undertaken only as a last recourse to resolve intractable disputes between petitioners and employers and their insurance carriers. See § 440.015, Fla. Stat. (Supp. 1994).[2] Even though the conference between Dr. Bernstein and representatives of the employer/carrier occurred after the filing of Kimes' claim, the statute contemplates "discussions ... held before or after the filing of a claim." § 440.13(4)(c), Fla. Stat. (Supp.1994). Here, there had been no EMA appointed at the time of the conference with Dr. Bernstein. Thus, the ex parte conference pursuant to section 440.13(4)(c) was permissible under Pierre.
We also hold that section 440.13(4)(c) does not violate Florida's constitutional right to privacy. Article I, section 23, of the Florida Constitution,[3] provides "an explicit textual foundation for those privacy interests inherent in the concept of liberty which may not otherwise be protected by specific constitutional provisions." Rasmussen v. South Florida Blood Serv., Inc., 500 So.2d 533, 536 (Fla. 1987). The Florida Supreme Court has held that privacy is a fundamental right subject to the compelling state interest standard of review. See Winfield v. Division of Pari-Mutuel Wagering, Dep't of Business Regulation, 477 So.2d 544 (Fla. 1985). If the right attaches to a claimed privacy interest, the burden of proof shifts to the state to prove that a governmental intrusion on privacy both serves a compelling state interest and accomplishes its goal through the least intrusive means. Id. Before the right to privacy attaches and the compelling state interest standard is applied, however, there must be a "legitimate" expectation of privacy. City of North Miami v. Kurtz, 653 So.2d 1025, 1028 (Fla.1995), cert. denied, 516 U.S. 1043, 116 S.Ct. 701, 133 L.Ed.2d 658 (1996); Stall v. State, 570 So.2d 257, 260 (Fla.1990), cert. denied sub nom., Long v. Florida, 501 U.S. 1250, 111 S.Ct. 2888, 115 L.Ed.2d 1054 (1991); Winfield, 477 So.2d at 547. "Determining whether an individual has a legitimate expectation of privacy in any given case must be made by considering all the circumstances, especially objective manifestations of that expectation." Stall, 570 So.2d at 260 (quoting Shaktman v. State, 553 So.2d 148, 153 (Fla.1989)(Ehrlich, C.J., concurring)); City of North Miami, 653 So.2d at 1028.
In the instant case, Kimes has failed to demonstrate that petitioners for *1042 worker's compensation benefits, such as himself, have a reasonable expectation of privacy vis-a-vis the employer, its insurance carrier, and the health care provider treating a worker injured in an industrial accident, regarding the medical records related to that treatment. The workers' compensation system transposed dispute resolution for workplace injuries from the private law of torts to a publicly administered and regulated system. See Lee v. Wells Fargo Armored Servs., 707 So.2d 700, 702 (Fla.1998); Richard A. Nagareda, Turning From Tort to Administration, 94 Mich. L.Rev. 899, 926 (1996). The very foundation of an employee's right to receive benefits under the self-executing system in Chapter 440 requires a healthcare provider to assess the injury, establish a causal connection to the workplace accident, and communicate that information to the employer's insurance carrier. See § 440.13, Fla. Stat. (1997). By presenting himself to be examined by a health care provider for the purpose not only for treatment for an injury, but also for evaluation of the injury and assessment of whether it is attributable to his employment, Kimes consented to the provider disclosing to the carrier medical information relating to the claim. See Acosta v. Cary, 365 So.2d 4, 5 (La.Ct.App.1978). The discussions authorized by section 440.13(4)(c) simply furthers that disclosure system. Pierre, 717 So.2d at 1116-1117. In fact, to accept Kimes' absolute privacy argument would make it impossible to petition for, controvert and decide claims under the workers' compensation law without resort to a system of litigation which chapter 440 is intended to avoid.
Accordingly, the issues raised on appeal and cross-appeal are found to be without merit, and the cause is AFFIRMED.
BOOTH AND BENTON, JJ., CONCUR.
NOTES
[1] Claimant appealed the December 1994 order denying benefits, but because other claims remained pending, this court found the order to be a non-final order, treated the appeal as a petition for a writ of certiorari, and denied the petition. Kimes v. S & A Plumbing Co., Case No. 95-82 (Fla. 1st DCA August 9, 1996). Thereafter, the claim for treatment to the neck and back was addressed by the JCC and a pending claim regarding wage loss was abandoned. Thus, the denial of authorization for surgery on the left ankle is now ripe for review.
[2] The statement of legislative intent provided in section 440.015 provides in part:

It is the intent of the Legislature that the Workers' Compensation Law be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer.... It is the intent of the Legislature to ensure the prompt delivery of benefits to the injured worker. Therefore, an efficient and self executing system must be created which is not an economic or administrative burden.
[3] Article I, section 23 of the Florida Constitution provides:

Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.