985 So.2d 631 (2008)
MATRIX EMPLOYEE LEASING and FCIC/First Commercial Claims Service, Appellants,
v.
Sharon PIERCE, Appellee.
No. 1D06-6647.
District Court of Appeal of Florida, First District.
June 18, 2008.
Rehearing Denied July 16, 2008.
*632 Kristin J. Longberry of Alvarez, Sambol, Winthrop & Madson, Orlando, for Appellants.
David E. Mallen, Orlando, and Richard A. Kupfer, Delray Beach, for Appellee.
VAN NORTWICK, J.
In this workers' compensation appeal, Matrix Employee Leasing and FCIC/First Commercial Claims Service (jointly the employer/carrier) seek review of an order of the Judge of Compensation Claims (JCC) which found compensable the chronic obstructive pulmonary disease suffered by claimant, Sharon Pierce, as aggravated by her exposure to toxic chemicals in the workplace. Because competent substantial evidence does not support the JCC's finding that clear and convincing evidence established that claimant's disease was caused by exposure to specific harmful chemicals at the levels to which she was exposed, see section 440.02(1), Florida Statutes (2005), we reverse.
In early 2005, through Matrix Employee Leasing, an employee leasing firm, the claimant began working for a cabinet-making business. While at work on October 5, 2005, she experienced shortness of breath. She left her place of employment and returned home. Because she continued to feel ill, however, she presented to a hospital emergency room. She was diagnosed with chronic obstructive pulmonary disease and was referred to a pulmonologist.
She then presented to Lawrence Gilliard, M.D., a pulmonologist who conducted an independent medical examination (IME). In his IME report, Dr. Gilliard described the claimant's history as having inhaled chemicals, apparently lacquer, at work in October 2005 which prompted the emergency room visit. Dr. Gilliard noted that claimant, who was then 45 years of age with previous work experience in the cabinet-making industry and who had smoked one and one half packs of cigarettes daily for thirty years, had "no problem with the chemicals" in the workplace *633 before that time. He added, however, that "once the new chemicals were employed she developed shortness of breath." One of the chemicals used by claimant's employer is known as "MagnaMax." Dr. Gilliard noted that the manufacturer of MagnaMax reports that, if there is a "significant exposure" to the chemical "that breathing needs to be restored." In his IME report, Dr. Gilliard stated his diagnosis as "probable Chronic Obstructive Pulmonary Disease aggravated by the chemical exposure."
The employer/carrier denied that claimant's condition was compensable. She subsequently filed a petition for benefits, and the issue of compensability was heard separately. At the hearing on compensability, Dr. Gilliard's deposition was admitted.
In his deposition, Dr. Gilliard opined that claimant experienced a temporary aggravation of her chronic lung illness as a result of exposure to chemicals, an aggravation which he described as "chemical pneumonitis." Dr. Gilliard neither knew the level of chemical exposure experienced by claimant nor was certain which chemicals used in claimant's workplace had caused the aggravation. Dr. Gilliard acknowledged that on an x-ray chemical pneumonitis looks similar to community acquired pneumonia. He testified that, without a patient's history, one could not distinguish between the two. Claimant's history, then, was a critical aspect of Dr. Gilliard's diagnosis. Dr. Gilliard's recitation of claimant's history in deposition, however, was not consistent with the history given by the claimant at the hearing, a discrepancy which the JCC did not address in the order under review.
As Dr. Gilliard explained, claimant tolerated the chemicals used at her place of employment "until the lacquer was changed to MagnaMax [and then] she developed symptoms acutely." MagnaMax had not been recently introduced before claimant's onset of breathing difficulty, according to the testimony of both the claimant and the business owner. Dr. Gilliard conceded that he did not know the level of exposure experienced by claimant and that another chemical used, Taylor 600, can also cause an acute condition. Further, he agreed that it was possible that the combination of MagnaMax, Taylor 600, and a lacquer thinner caused the acute condition. He added that her shortness of breath in October 2005 could also have been the result of prolonged exposure to chemicals so long as the duration of her exposure was increased. Thus, he concluded that it was his opinion that either Taylor 600 or MagnaMax caused the chemical pneumonitis.
Section 440.02(1), Florida Statutes (2005), which defines the term "accident" for purposes of the workers' compensation law, provides in pertinent part:
An injury or disease caused by exposure to a toxic substance, including, but not limited to, fungus or mold, is not an injury by accident arising out of the employment unless there is clear and convincing evidence establishing that exposure to the specific substance involved, at the levels to which the employee was exposed, can cause the injury or disease sustained by the employee.
The statute expressly requires both a higher standard of proof ("clear and convincing evidence") and a certain degree of specificity as to the "specific substance involved" and the "levels to which the employee was exposed" before an injury from toxic exposure can be found compensable. "Clear and convincing evidence" has been defined as an "intermediate level of proof [that] entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses *634 must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy." Dep't of Children & Families v. F.L., 880 So.2d 602, 614 n. 7 (Fla.2004) (Cantero, J., concurring) (quoting In re Davey, 645 So.2d 398, 404 (Fla. 1994)).
In finding compensability, the JCC noted that Dr. Gilliard's
deposition testimony is the only medical opinion testimony addressing that Claimant had sufficient exposure to the harmful chemicals present in the workplace to warrant the diagnosis of chemical pneumonitis. As there is no competent medical testimony that her exposure levels were insufficient, I find the evidentiary threshold of clear and convincing evidence is supported by this record.
(Emphasis supplied by JCC).
Even though section 440.02(1) imposes a heightened standard of proof on the JCC, our standard of review is unchanged. As we explained in McKesson Drug Co. v. Williams, 706 So.2d 352, 353-54 (Fla. 1st DCA 1998):
In civil cases involving the burden of clear and convincing evidence, an appellate court may not overturn a trial court's finding regarding the sufficiency of the evidence unless the finding is unsupported by record evidence, or as a matter of law, no one could reasonably find such evidence to be clear and convincing. Accordingly, the appellate court's function is not to conduct a de novo proceeding or reweigh the evidence by determining independently whether the evidence as a whole satisfies the clear and convincing standard, but to determine whether the record contains competent substantial evidence to meet the clear and convincing evidence standard.
(Citations omitted).
To the extent that the JCC was implying in the order under review that the employer/carrier were obliged to produce evidence disproving the claim, the JCC erred. Proof of causation is wholly the claimant's burden. See Wausau Ins. Co. v. Tillman, 765 So.2d 123, 124 (Fla. 1st DCA 2000)("It was the claimant's burden to establish the existence of a causal connection between his employment and his alleged injuries."). Moreover, Dr. Gilliard's deposition testimony does not constitute competent substantial evidence to support the JCC's finding that the claimant satisfied the evidentiary threshold required by section 440.02(1), because Dr. Gilliard had no knowledge of the level of claimant's exposure and was not certain to which specific chemical she was exposed. There is no record evidence of the level of exposure at claimant's place of employment. Further, while Dr. Gilliard testified that claimant was exposed to MagnaMax only shortly before the onset of her symptoms, the claimant herself testified that MagnaMax was used since the first day of her eight months of employment. Consistent with the claimant's testimony, the owner of the cabinet business testified that MagnaMax had been used "on and off for years." Thus, it is clear in this record that Dr. Gilliard's understanding of the history of claimant's exposure, which he admitted was crucial for distinguishing between chemical pneumonitis and community acquired pneumonia, was contrary to the claimant's history.
For the foregoing reasons, we conclude that no competent substantial record evidence supports the findings that the claimant satisfied the requirements of section *635 440.02(1). Accordingly, the order is reversed.
REVERSED.
BROWNING, C.J., and ROBERTS, J., concur.