63 So.3d 802 (2011)
ALTMAN CONTRACTORS and North River Insurance Company, Appellants,
v.
Dynelle GIBSON, Appellee.
No. 1D10-3008.
District Court of Appeal of Florida, First District.
April 29, 2011.
Rehearing Denied June 21, 2011.
*803 William H. Rogner of Hurley, Rogner, Miller, Cox & Waranch & Westcott, P.A., Winter Park, for Appellants.
Susan W. Fox of Fox & Loquasto, P.A., Tampa, and Laurie Thrower Miles of Smith, Feddeler, Smith & Miles, P.A., Lakeland, for Appellee.
PER CURIAM.
In this workers' compensation appeal, the Employer/Carrier (E/C) challenges an order of the Judge of Compensation Claims that finds Claimant's mold exposure injury compensable. We agree with the E/C's argument that reversal is warranted because no record evidence establishes the levels of mold to which Claimant was exposed in the workplace, a statutory condition imposed by section 440.02(1), Florida Statutes (2005). See Matrix Employee Leasing v. Pierce, 985 So.2d 631 (Fla. 1st DCA 2008). We also agree that the JCC erred in substituting the causation standard expressed in Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA 1980), for the more exacting statutory causation standard for mold exposure claims enacted by the Legislature. See Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 642 (Fla. 1st DCA 1996) ("When the Legislature makes a substantial and material change in the language of a statute, it is presumed to have intended some specific objective or alteration of the law, unless a contrary indication is clear."). Because we agree with these arguments, we REVERSE the order on appeal, and need not reach the remaining issues raised by the E/C.
HAWKES and MARSTILLER, JJ., concurs; WOLF, J., dissents with opinion.
WOLF, J., Dissenting.
The substantial medical and lay evidence presented in this case, accepted as credible by the JCC, supports the JCC's determination that the mold exposure injury was compensable. Accordingly, I dissent.
The evidence found credible by the JCC established that Claimant, a construction supervisor, encountered hairy and protruding mold in an indoor work environment on a regular basis and was charged with the duty of inspecting and reporting the mold incursion to the Employer. At one point, a substance visually identified as mold by Claimant and treated as such by the Employer was found on wet drywall which required extensive expenditures by the Employer to remove and destroy. Workers hired by the Employer actually removed the mold while outfitted in hazardous *804 material suits. While the demolition was occurring, Claimant, who was not wearing protective gear, accidently happened into a cloud of dust and mold spores. After these exposures, and at a time temporally consistent with the germination of the colonies of mold later found in Claimant's lungs, Claimant became ill and was rendered comatose as a result of the mold infection in her lungs. The drywall and the mold in the workplace were destroyed and never tested (nor was the air in the work environment), but the mold in Claimant's lungs was tested and affirmatively identified by a medical expert as the most predominant form of mold found on wet drywall.
Both Claimant's independent medical examiner (IME), and the expert medical advisor (EMA) pulmonologist, whose opinion carries a statutorily imposed "nearly conclusive effect," testified that although the mold in question is ubiquitous (consistent with the E/C's expert opinion), the normal, everyday levels of mold to which all are exposed are not concentrated enough to cause Claimant's condition. Pierre v. Handi Van, Inc., 717 So.2d 1115, 1117 (Fla. 1st DCA 1998). The EMA further testified that based on the medical and lay evidence presented to him, in his expert opinion, Claimant's exposure occurred in the workplace. Except for the E/C's expert's testimony that Claimant's exposure could have occurred anywhere, a proposition which drew skepticism from the JCC, the record failed to reveal any other possible source of Claimant's mold exposure. Based on the foregoing facts, the JCC found that she was clearly convinced that Claimant's condition was caused by her exposure to mold in the workplace. In reaching this conclusion, the JCC properly exercised her prerogative as the finder of fact. The majority holds, however, that the JCC was prohibited from reaching her finding of compensability because Claimant failed to introduce direct evidence of "the levels of mold to which [she] was exposed in the workplace."
While section 440.02(1), Florida Statutes (2005), imposes a heightened standard for the compensability of injuries caused by mold exposure, it does not impose the practically impossible burden suggested by the majority. Section 440.02(1) provides that an injury caused by exposure to fungus or mold is not a compensable injury, unless "there is clear and convincing evidence establishing that exposure to the specific substance involved, at the levels to which the employee was exposed, can cause the injury or disease sustained by the employee." (Emphasis added). Here, Claimant's injury was severe Aspergillus lung infection (a colonization of mold spores in Claimant's lungs), and all of the medical experts agreed that this condition resulted from nothing other than Claimant's unquestionable exposure to mold spores which infected, and then grew in, her lungs. The E/C's medical expert opined that the mold spores which in fact caused Claimant's condition are ubiquitous, and sufficient exposure could have occurred anywhere; however, there was no dispute that exposure to this mold caused Claimant's injury. Accordingly, the only remaining factual question for the JCC to resolve was where Claimant's sufficient mold exposure occurred, not whether it occurred, or whether it was capable of causing the injury in question.
Under the Workers' Compensation Law, Claimant had the obligation of proving her exposure to mold by clear and convincing evidence. The clear and convincing standard of proof can be met by evidence which is "wholly circumstantial." Cf. Fla. E. Coast Ry. Co. v. Thompson, 93 Fla. 30, 111 So. 525, 528 (Fla.1927); see also Century Prop., Inc. v. Machtinger, 448 So.2d 570, 573 (Fla. 2d DCA 1984) ("While the *805 proof may be wholly circumstantial, it is always incumbent upon the person asserting fraud to prove it by clear and convincing evidence."). Whether evidence is clear and convincing is predicated on a belief and conviction in the mind of the finder of fact, not that of the appellate court. See McKesson Drug Co. v. Williams, 706 So.2d 352, 354 (Fla. 1st DCA 1998) ("the appellate court's function is not to conduct a de novo proceeding or reweigh the evidence by determining independently whether the evidence as a whole satisfies the clear and convincing standard, but to determine whether the record contains competent substantial evidence to meet the clear and convincing evidence standard.").
Section 440.02(1) does not require an employee to demonstrate the precise levels of mold to which she is exposed, nor does it require that any element of a mold claim be proven by any particular form of evidence, or to a degree of irrefutable certainty. To reach its conclusion, the majority has improperly afforded weight and credence to the E/C's expert testimony, suggesting that repeated contemporaneous air quality studies were necessary in this case to determine the occupational cause of Claimant's injury. This was testimony which the JCC permissibly rejected.
Here, the very expert who testified regarding the necessity of air quality studies (whose opinion on causation was rejected by both the JCC and the EMA), also testified that airborne mold levels are very dynamic and fluctuate depending on a multitude of factors, making air quality samples unreliable and only indicative of what is in the air at the time the sample is taken. As conceded by the expert, such testing, even when performed, will capture only those mold spores external to the employee's lungs, nose, or mouth, and even instantaneous samples will not directly prove the levels of inhalation, digestion, or exposure, but will capture only spores to which the individual was not exposed. Here, however, the mold which in fact invaded Claimant's lungs was sampled and proven to be present in sufficient quantities to cause the injury sustained.
Accordingly, the majority decision, founded on the absence of contemporaneous air-quality studies and a complete devaluation of the circumstantial evidence of record, has constructed a burden of proof for mold exposure claims which is artificial, illusory, and practically unachievable and represents a burden which far exceeds that imposed by the Legislature.
Further, the case of Matrix Employee Leasing v. Pierce, 985 So.2d 631 (Fla. 1st DCA 2008), cited by the majority for its conclusion, is easily distinguishable from this case. In that case, the somewhat equivocal opinion given by the claimant's expert as to the particular ailment contracted by the claimant was in large part based on an inaccurate history given by the claimant. In addition, the expert could not identify which chemical from the workplace caused the injury. In the instant case, the determination of the actual injury suffered by Claimant was not discovered as a result of patient history. Even if it was, there is no indication of an inaccurate patient history. Further, in the instant case, the actual type of mold that caused the injury was found in the patient's lungs. Thus, Matrix does not support the majority's conclusion. I would affirm.