414 So.2d 652 (1982)
BUTCH'S CONCRETE and South Carolina Insurance Co., Appellants,
v.
Prentice HENDERSON, Appellee.
No. AB-323.
District Court of Appeal of Florida, First District.
June 4, 1982.
*653 B.C. Pyle of Whittaker, Pyle, Stump & Webster, Orlando, for appellants.
Irvin A. Meyers of Meyers, Mooney & Adler, Orlando, for appellee.
THOMPSON, Judge.
The employer/carrier (E/C) appeal a workers' compensation order which admitted into evidence, over objection, unauthenticated medical reports and hospital records and which awarded a change of physician, wage-loss benefits, and vocational rehabilitation. We reverse the admission into evidence, over objection, of the unauthenticated medical reports and hospital records, and the award of wage-loss benefits and rehabilitation. We affirm the change of physician.
As to rehabilitative benefits, § 440.49(1), Florida Statutes (1979), provides that:
If such services are not voluntarily offered or accepted, the Division of Workers' Compensation of the Department of Labor and Employment Security, upon application of the employee, employer or carrier, after affording the parties an opportunity to be heard, may refer the employee ... [for a rehabilitative report]. On receipt of such report, and after affording the parties an opportunity to be heard, the deputy commissioner may order ... [rehabilitative treatment]. (emphasis supplied)
In the present case it appears that claimant has not applied to the Division of Workers' Compensation for such rehabilitative services, nor did claimant request that the deputy award such services, and neither party to this appeal was advised or on notice that such benefits might be awarded by the deputy commissioner. Section 449.49(1) expressly requires "an opportunity to be heard" on this issue, and the award of rehabilitative services in the proceeding below was contrary to the statutory requirement. Claimant may reapply for such benefits by complying with the provisions of § 440.49(1).
Before wage loss benefits can be awarded, the claimant must establish the existence of some degree of permanent impairment. Prior to the amendment of the workers' compensation law in 1979, the deputy commissioner (the deputy) had a fairly wide latitude to find permanent disability or impairment based solely on the lay testimony of the claimant, on his own observations of the claimant, or on both. In 1979, in amending the law relating to permanent impairment and wage-loss benefits, the legislature clearly set out the purpose of the amendments. Section 440.15(3)(a)3., Fla. Stat. (1979) states:
In order to reduce litigation and establish more certainty and uniformity in the rating of permanent impairment, the division shall establish and use a schedule for determining the existence and degree of permanent impairment based upon medically or scientifically demonstrable findings. The schedule shall be based on generally accepted medical standards for determining impairment and may incorporate all or part of any one or more generally accepted schedules used for such purpose, such as the American Medical Association's Guides to the Evaluation of Permanent Impairment. On August 1, 1979, and pending the adoption, by rule, of a permanent schedule, Guides to the Evaluation of Permanent Impairment, *654 copyright 1977, 1971 by the American Medical Association, shall be the temporary schedule and shall be used for the purposes hereon. (emphasis supplied)
In respect to wage-loss benefits § 440.15(3)(b)1., Fla. Stat. (1979) provides that each injured worker who suffers any permanent impairment determined pursuant to the schedule, may be entitled to wage-loss benefits. Although any permanent impairment is sufficient to be a basis for a wage-loss claim, not only the degree of impairment but the existence of any impairment must be "based upon medically or scientifically demonstrable findings." § 440.15(3)(a)3., Fla. Stat. (1979). Obviously even this amendment does not require that a medical doctor testify to a permanent disability in every instance. A claimant who has lost an arm as a result of an industrial accident has clearly suffered a demonstrable permanent impairment that a deputy can determine by his own observation of the claimant. By the same token, if the claimant cannot demonstrate some actual impairment that can be observed by the deputy, then lay testimony or observation by the deputy, standing alone, is not sufficient to establish any permanent impairment if the purpose in the language in the 1979 amendment is to be given any force and effect. Since there is no permanent impairment based upon medical or scientifically demonstrable findings in the record in this case, we reverse the award of wage-loss benefits.
We also reverse the admission into evidence of Dr. Montes' medical report. The medical reports are hearsay and should not be admitted over objection in the absence of a stipulation as to their admissibility. The deputy in his order found that to require the claimant to take the deposition of Dr. Montes would violate the spirit of the current workers' compensation law which is intended to provide maximum benefits to the claimant with minimum costs. The claimant has some burden to prove his case and the cost of the deposition of a doctor is not a sufficient excuse for not taking it, particularly since that cost is paid by the E/C, not the claimant, if the claim is compensable.
MILLS, J., concurs.
WENTWORTH, J., dissenting and concurring in part.
WENTWORTH, Judge, dissenting and concurring in part.
I agree that rehabilitation benefits were not properly awarded but would otherwise affirm the order appealed. Only a work search issue was specifically raised below in defense against wage loss benefits, along with general contentions that claimant was not permanently and totally disabled and all benefits due had been paid. Employer/carrier now asserts, as an additional issue on appeal, a lack of competent substantial evidence to show any permanent impairment because medical records were improperly admitted. I find no merit in the search issue and would not reach the alleged inadmissibility of medical records because those records would be essential only if a specific impairment rating were required for affirmance of the award in this case.[1] Claimant testified as to more than five years' performance of the job in which he was injured, without symptomatic back limitations. Evidence of claimant's surgery for removal of a disc as a result of his accident, and as to his physical condition following recovery from surgery, including his inability to perform certain employment for a trial period, supports the deputy's finding of some permanent impairment as a result of the accident and surgery in the context of this case. The deputy appropriately noted at the hearing in this case:
He had surgery, removal of a disc and really the issue under the wage loss is a simple matter. Has he reached maximum medical improvement and does he *655 have any disability. One percent would be enough. And so I don't think that all of the issues we used to get into under the old law are really applicable to this case. I mean we have very simple issues, and I think it was the intent of the legislature to get lawyers out of Workmen's Compensation cases, and in doing so, it had to be their obvious intent to at least make it easy for these wage loss cases to be presented since your only claim  ... Three months of wage loss. So the cost of taking the doctor's deposition or having the doctor here to testify would be equal to the three months wage loss.... The Claimant had surgery. I'm sure he can testify to that. And that he had a disability.
Wage-loss benefits are payable when a worker suffers "any permanent impairment." § 440.15(3)(b), Florida Statutes (1979). Under this statutory standard, no particular degree of impairment is required, and entitlement to wage-loss benefits is clearly not dependent on a specific impairment rating. The permanent impairment rating provision of § 440.25(3)(b), Florida Statutes (1979),[2] for impairment awards is therefore not directed to the evidentiary predicate necessary to establish a claimant's entitlement to wage-loss benefits for permanent partial impairment. While § 440.15(3)(b), Florida Statutes (1979), establishes that the Division of Workers' Compensation shall adopt a "schedule for determining the existence and degree of permanent impairment based upon medically or scientifically demonstrable findings," (e.s.)[3] the majority concedes that in appropriate circumstances the necessary medical or scientific evidence may be supplied by lay testimony. In the present case I would find claimant's testimony sufficient to permit the deputy's determination of the existence of some causally related permanent impairment in accordance with the schedule. The argument here and before the deputy reflects no real issue as to specific impairment standards, relating instead to alleged necessity for a physician's numerical rating attributable to the accident in question.
I would affirm.
NOTES
[1] The fact of maximum medical improvement is not in controversy, nor is any question raised as to compensability or causal connection between the current industrial injury and medical benefits including hospitalization and disc surgery during temporary disability between February and October, 1980.
[2] No deputy commissioner shall make a finding of a degree of permanent impairment that is greater than the greatest permanent impairment rating given the claimant by any examining or treating physician, except upon stipulation of the parties.
[3] The American Medical Association Guides to the Evaluation of Permanent Impairment is the statutorily mandated temporary schedule.