510 So.2d 1015 (1987)
David PETERSON, Appellant,
v.
GEORGIA-PACIFIC CORPORATION, Self Insured, Appellee.
No. BO-225.
District Court of Appeal of Florida, First District.
July 15, 1987.
*1016 Alex D. Littlefield, Jr., of Barton, Davis & Fernandes, Gainesville, for appellant.
Jack A. Langdon, of Jack A. Langdon, P.A., Gainesville, for appellee.
MILLS, Judge.
Peterson appeals an order of the deputy commissioner awarding temporary total disability benefits for the limited period between 20 February and 8 April 1986. Georgia-Pacific Corporation, the self-insured employer (G-P), cross-appeals from the denial by the deputy of its defense that Peterson fraudulently misrepresented his physical condition on the employment application. We reverse on the appeal and affirm on the cross-appeal.
On 13 March 1985, Peterson injured his low back when he slipped on wet scaffolding. He did not see a doctor after the accident, but rather a physician's assistant, Mr. Knight. Peterson was treated conservatively and released to light duty on 3 April 1985. The light duty slip said nothing about plans to release Peterson to full duty on any given date; Knight's office progress notes indicate only that "light duty should be for approximately 2 weeks (4/15/85)."
On 15 April, after two weeks of light work, G-P told Peterson to return to Knight's office for an assessment of his physical condition. When Peterson arrived at the office, the receptionist handed him a release to full duty; he underwent no physical examination and indeed never saw Knight. Knight first testified that Peterson had requested the full duty slip, but later amended that testimony to indicate that "someone" had come into the office and asked that a full duty slip be prepared. He did not see who it was and didn't know *1017 that it was Peterson. As soon as Peterson gave the full duty slip to G-P, he was fired. He has not worked since that discharge and does not dispute the deputy's finding that any work search was inadequate.
On 15 May 1985, Peterson was seen by a neurologist, Dr. Feussner, at the behest of G-P, who paid him TTD benefits from 15-21 May during the time Feussner was evaluating him. A CT scan revealed signs of a herniated disc at L-5, S-1, but according to Feussner, a confirmatory myelogram ruled out a herniated disc. After the initial 15 May visit, Feussner's office notes indicated that Peterson "should not return to work until re-exam"; on 4 June that he was "not ready to go to work yet"; and on 18 July that he was "released to light duty".
On 18 October 1985, Peterson was examined by Dr. Gustin for purposes of the continuation of his welfare benefits. In his report to HRS, Gustin stated that "the results of the exam and review of the CAT scan indicate a herniated disc at L-5, S-1 with severe dysfunction and Peterson is temporarily totally disabled from any employment." It was Dr. Gustin's opinion that Peterson was TTD on the date he first saw him to the date of his subsequent surgery, 20 February 1986.
Dr. Gustin referred Peterson to a neurosurgeon, Dr. Reid, who testified that the tests performed by Dr. Feussner clearly indicated a herniated disc at L-5, S-1. A microsurgical diskectomy was performed on 20 February 1986. Since the surgery, Peterson has dramatically improved and is no longer symptomatic. Reid placed Peterson at maximum medical improvement on 8 April 1986 with a 5% permanent impairment.
G-P had paid benefits and salary up until Peterson's 15 April 1985 termination. It defended Peterson's claim for TTD benefits from that date on the ground that Peterson had fraudulently represented his physical condition on the employment application. That application did not reveal that, in 1979, Peterson was in a compensable automobile accident, suffering injury to his mouth, right arm and low back. A deputy commissioner held that, as a result of this accident, Peterson had a 20% permanent impairment to his body as a whole, 5% of which was attributable to his back. It was Peterson's testimony that he had no residual problems from that back injury, diagnosed as a sprain, and that he had had no trouble performing heavy labor because of it up to the time of the instant accident. G-P's personnel manager testified that he would not have hired Peterson had he known about the 1979 injury, but there was no medical testimony that the 1979 injury caused or contributed to the 1985 injury.
The deputy denied G-P's fraudulent concealment defense, finding that it had not proven a causal relationship between the 1985 injury and the false representation. With regard to Peterson's claim for TTD, the deputy found that he had been released to full duty on 15 April 1985 and that there was no medical evidence between that date and Peterson's consultation of Dr. Reid on 4 February 1986 that he could not work without restriction. After 4 February, he found that Peterson had been capable of light work until his 20 February surgery. TPD benefits were denied based on the lack of a work search for that period. The deputy did find Peterson entitled to TTD benefits from the date of the surgery to MMI, 8 April 1986.
The evidentiary standard applicable to medical testimony in workers' compensation cases is the "substantial evidence" rule, i.e. "the deputy commissioner's findings of facts should be upheld unless there is no competent, substantial evidence, which accords with logic and reason, to sustain them." Desmond v. Medic Ayers Nursing Home, 492 So.2d 427, 429 (Fla. 1st DCA 1986) (emphasis supplied). Any conclusions or opinions of an expert witness based on facts or inferences not supported by the evidence in a cause have no evidential value. Desmond at 429 citing Arkin Construction Co. v. Simpkins, 99 So.2d 557 (Fla. 1957).
In this case, the deputy relied on the issuance by Knight, a physician's assistant, of a slip indicating that Peterson could return to full-duty work on 15 April 1985. However, on 3 April 1985, Knight had released *1018 Peterson to light duty work wearing a back brace. That release slip said nothing about a projected full duty release date, and Knight testified that he planned on 3 April to release Peterson on 15 April "if the light duty went well." However, on 15 April, Knight did not examine or even see Peterson to assess his condition, but simply signed a release form at the request of an unknown person. Therefore, any opinion as to Peterson's condition on 15 April which was expressed by the signing of the release form was totally without foundation and does not provide competent substantial evidence that Peterson was able to perform full duty without restriction as of that date.
Further, the deputy erroneously states that Knight's release slip is the only evidence between 15 April 1985 and 4 February 1986 regarding claimant's ability to work. On the contrary, Dr. Feussner's office notes clearly state that as of 15 May 1985, Peterson should not return to work until further examination. Further, it was Dr. Gustin's opinion that Peterson was TTD on 18 October 1985 and remained so until his surgery on 20 February 1986.
Finally, the deputy finds that Peterson was able to do light work between his first visit to Dr. Reid on 4 February 1986 and the 20 February surgery and that the lack of a job search precludes benefits for this period. Peterson's ability to work at all during this period is totally unsupported by any evidence in the record, and is directly contradicted by Dr. Gustin's testimony. Based on the foregoing, the order denying TTD benefits is reversed and the case remanded for entry of an order awarding such benefits from 15 April 1985 to 8 April 1986.
The deputy did not err, however, in rejecting the E/C's defense of fraudulent concealment. In order for such a defense to prevail, there must be evidence of a medical relationship between the present injury and the misrepresented physical condition resulting from an undisclosed prior injury. Martin Company v. Carpenter, 132 So.2d 400 (Fla. 1961). Such a relationship is not shown by evidence that both injuries involved claimant's back, Cycenas v. Sarasota Coca-Cola Bottling Co., 440 So.2d 39, 40 (Fla. 1st DCA 1983), nor by evidence that the claimant would not have been hired if the previous back injury had been revealed on the employment application. Higgins v. Trigil Repair, Inc., 436 So.2d 222 (Fla. 1st DCA 1983); Dunnell v. Robbins Warehouse, 465 So.2d 648 (Fla. 1st DCA) p.f.r.dism. 465 So.2d 675 (Fla. 1985). Without medical testimony that claimant's condition is related to the prior injury, the required causal relationship is not established. Dunnell.
Here, not only was there no testimony that Peterson's condition was related to his prior back injury, Dr. Gustin opined that, if no ruptured disc had been ascertained at the earlier injury, the new injury was unrelated to it. Dr. Reid stated that Peterson's return to work after the 1979 injury argued against the occurrence of a herniated disc at that time. There was no evidence that the 1979 injury was anything but a sprain which never hindered Peterson's work ability. The denial of the misrepresentation defense is affirmed.
WENTWORTH and BARFIELD, JJ., concur.