527 So.2d 266 (1988)
Howard PETERS, Appellant,
v.
ARMELLINI EXPRESS LINES and Nationwide Insurance, Appellees.
No. 87-838.
District Court of Appeal of Florida, First District.
June 8, 1988.
Rehearing Denied June 30, 1988.
Anthony J. Diamond, of Diamond & Diamond, P.A., Fort Myers, for appellant.
Gerald W. Pierce, of Henderson, Franklin, Starnes & Holt, P.A., Fort Myers, for appellees.
SHIVERS, Judge.
In this workers' compensation case, claimant appeals from an order denying his claim for benefits. First, claimant asserts that the deputy commissioner (DC) erred in finding that claimant failed to give the employer/carrier (E/C) timely notice of his injury. Second, claimant contends that the DC erred in finding that claimant failed to prove that his medical problems were causally related to his employment activities. For the reasons stated below, we reverse on the first point and remand the case to the DC for further proceedings on the second point.
*267 Claimant, a 55-year-old man, worked for the employer as a long distance truck driver. On November 19, 1986, claimant and a co-driver unloaded approximately 1,500 cases of flowers from their truck. Claimant testified that he felt a twinge in his back as he was bending over to pick up some of the flower boxes and that he had to stand up once or twice. He stated that he had minor pain while unloading the remainder of the flowers at other locations. He stated that the pains usually occurred while he was lifting the cases of flowers. When claimant returned from this job, he resigned from the company for reasons unrelated to his injury.
Claimant testified that his pain worsened each day. On November 30, 1986, claimant was taken to the emergency room by ambulance because he could not get out of bed. At the emergency room, claimant gave a history of having back pain for about nine days after he unloaded a truck. While at the emergency room, claimant was prescribed medication and bed rest. Claimant was referred to Dr. Beaulieu, an orthopedist, who saw claimant on December 8, 1986, and December 19, 1986, at which time further bed rest and medications were prescribed. Dr. Beaulieu's records indicate that claimant was seen again on January 2, 1987, January 21, 1987, February 13, 1987, March 3, 1987, March 17, 1987, March 31, 1987, and April 23, 1987. Dr. Beaulieu's records indicate that claimant appears to have a herniated disc and that further work-up, including hospitalization and a myelogram, is needed.
Claimant testified that he has never had back problems. Although claimant admitted that he knew he was supposed to report any injury to his employer, he did not report his injury to his employer until sometime in January of 1987. Claimant testified that he did not tell his employer earlier because he did not believe his back was "going to be  as damaged as it was."
Claimant filed a claim for benefits on February 13, 1987. After a hearing on June 30, 1987, the DC denied the claim for benefits for the following reasons:
4. The claimant readily admits he did not give notice within thirty days of the alleged occurrence.
5. The claimant has not proved with competent and substantial evidence that the lifting activity caused the claimant's medical problems. He certainly did not report it in a timely fashion to avail himself of the presumptions accorded by the law.
Section 440.185(1), Florida Statutes (1986) states that an employee shall give notice of an injury to the employer within thirty days after the date of the injury. Although the DC found that claimant failed to give notice to his employer within the statutorily required thirty-day period, section 440.185(1)(b) permits a DC to excuse the failure to give notice if "for some satisfactory reason such notice could not be given." This court has recently addressed this statutory language in the cases of Slater v. United Parcel Service, 507 So.2d 1146 (Fla. 1st DCA), rev. dismissed, 518 So.2d 1278 (Fla. 1987) and Blocker v. Ardmore Farms, 524 So.2d 1081 (Fla. 1st DCA 1988).
Slater v. United Parcel Service involved a claimant who injured his calf on December 24, 1984, during work. It is clear from the facts of the case that the claimant knew his pain was related to his employment injury. However, our court focused on the claimant's knowledge of the seriousness of his injury. We noted that the claimant was examined by his doctor in early January and was told that his muscles were stiff from overworking his leg. During the claimant's third visit to his doctor in late January, he was told that he might have a disc problem. The claimant saw another doctor in February, and a CAT scan was subsequently performed. Upon learning the results of the CAT scan, the claimant reported his injury to his supervisor on April 23, 1985, four months after the incident at work which caused his injury. After a hearing on the claim for benefits, the DC concluded that timely notice was not given. In reversing the DC, we observed:

*268 3 Larson's Workmen's Compensation Law, Section 78.41(a), states that `[t]he time period for notice [of] claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness and probable compensable character of his injury or disease.'
507 So.2d at 1148. We found that the claimant was unaware of the severity of his injury until the CAT scan was performed. Our court noted that before realizing the severity of his injury, the claimant had made a conscientious effort to alleviate his pain through prescribed bed rest, pain medications and muscle relaxants and that claimant had acted reasonably under the circumstances.
In Blocker v. Ardmore Farms, the claimant stated that he felt a pain in his back on September 18, 1986, while he was loading boxes on a truck at work. Ten days later, claimant consulted a physician who treated him for muscle spasm. Claimant returned to his physician three additional times and was referred to a neurologist for an EMG. The EMG, performed on December 18, 1986, revealed a neurological abnormality indicating a possible herniated disc. The claimant immediately filed a claim for compensation benefits. The unrefuted testimony in the record indicated that the claimant notified his employer at some point in October, approximately 1 1/2 months after the alleged injury. The DC denied the claimant's claim for benefits finding that the claimant failed to give notice of the alleged injury in accordance with section 440.185. In reversing the DC's order, this court found that "[t]he Florida Workers' Compensation Law does not hold workers' compensation benefits hostage to the claimant's scrupulously and instantly reporting each and every seemingly minor accident and injury. An employee who did so would soon acquire a reputation as a malingerer, hypochondriac, crank or other undesirable." 524 So.2d 1083 (quoting Great Dane Trailers v. Clark, 520 So.2d 53, 54, n. 1 (Fla. 1st DCA 1988)). This court found that the claimant acted reasonably under the circumstances in not notifying the E/C of his injury within the statutory time period because the claimant had no notice of the possible severity of his injury until after the thirty-day time period had passed.
The instant matter is very similar to both Blocker and Slater. Claimant testified that he felt a twinge in his back on November 19, 1986, while unloading boxes of flowers from a truck. Claimant testified that his pain worsened each day until he was forced to go to the emergency room at the hospital, approximately ten days after the date that he felt the initial twinge in his back. At that time, bed rest and medications were prescribed. Claimant was seen by a physician on December 8, 1986, and December 19, 1986, at which time further bed rest and medications were prescribed. Medical records introduced into evidence indicate that claimant again saw his physician two times in January, once in February, three times in March and once in April. Clearly, claimant has made a conscientious effort to alleviate his pain through prescribed bed rest and medications. The unrefuted testimony in the record indicates that claimant notified his employer of his injury sometime in January of 1987. Claimant testified that he did not notify his employer before that time because he did not believe his back was "going to be  as damaged as it was." In accordance with the law as established in Slater v. United Parcel Service and Blocker v. Ardmore Farms, we find that claimant acted reasonably under the circumstances in not notifying his employer of his injury within the statutory time period. Accordingly, we reverse that portion of the DC's order finding that claimant failed to give timely notice of his injury.
With regard to causation, claimant's evidence on this issue consisted of (1) claimant's testimony at the hearing and (2) the medical reports from Dr. Beaulieu and the emergency room. Claimant did not offer the testimony of Dr. Beaulieu, either live or by deposition, into evidence at the hearing. Nevertheless, claimant argues that reasonable medical probability of a causal relationship may be predicated upon lay testimony. *269 However, although lay testimony is of probative value in establishing the sequence of events, actual inability or ability to perform work, pain, and similar factors within the actual knowledge and sensory experience of the claimant, "lay testimony cannot be used to establish causal relationship within reasonable medical probability as to conditions and symptoms that are not readily observable." Broadfoot v. Albert Hugo Association, Inc., 478 So.2d 863, 865 (Fla. 1st DCA 1985). Therefore, lay testimony alone is not sufficient in all circumstances. Decks, Inc. of Florida v. Wright, 389 So.2d 1074 (Fla. 1st DCA 1980). Furthermore, this court has held that "[s]ofttissue injuries, such as lower back difficulties, are not readily observable, and hence are not susceptible to evaluation by lay persons." Vero Beach Care Center v. Ricks, 476 So.2d 262, 264 n. 1 (Fla. 1st DCA 1985). See also Cintas Corp. v. Price, 424 So.2d 900 (Fla. 1st DCA 1983); Scotty's, Inc. v. Jones, 393 So.2d 657 (Fla. 1st DCA 1981).
Although there is no medical testimony in the record regarding the issue of causation, medical reports have been admitted, without objection, which contain the following statements:
Doctor's Report of 12-8-86: "The patient's symptoms apparently began on the 22nd day of November when he was unloading cases of flowers about 1500 to 2000 in number."
Doctor's Report of 2-13-87: "We are awaiting further information on whether this patient's injuries will be covered by Workman's Comp. as this is an on the job injury."
However, although Dr. Beaulieu states that claimant's injury is an "on-the-job injury," the report contains no finding which would constitute medical evidence based on a reasonable medical probability that claimant's injury was caused by claimant's work-related activities.
Claimant should have taken Dr. Beaulieu's deposition and established causation through Dr. Beaulieu's testimony. In this regard, the following testimony took place at the conclusion of the hearing:
THE DEPUTY: Nobody wants to depose the doctor, I assume.
MR. MOTES (Employer/Carrier's attorney): Well, that's a question that I don't  maybe I don't understand exactly. It's my understanding that medical causation is an element of  compensability.
THE DEPUTY: Well, perhaps we can discuss this later.
MR. MOTES: All right.
MR. DIAMOND (Claimant's attorney): I can take his deposition post-hearing. And schedule it, you know, for early July.
THE DEPUTY: Well, the situation you're in he's going to say, I rely on the patient's history and yes, it's reasonable and it's caused by that and you've spent a thousand dollars, somebody has.
MR. DIAMOND: I know what he's going to say basically.
THE DEPUTY: Well, if you can agree 
MR. DIAMOND: Why don't we just say I'm going to talk to my client and then we can 
THE DEPUTY: See, if you can't agree that that's what he's going to say. I mean, he hasn't  I mean, that's the only history he's got and I would be very much surprised if he would say, you know, I don't think it's reasonable.
MR. DIAMOND: Yeah.
THE DEPUTY: I mean, I hate to see either one of you spend that kind of money.
MR. DIAMOND: Well, I agree. I'd like to resolve that.
THE DEPUTY: Since we have his reports without a problem.
MR. DIAMOND: I think we can resolve it, you know, by the end of the week.
THE DEPUTY: All right. Well, why don't you let me know then.
This court has held that "[t]he claimant has some burden to prove his case and the cost of the deposition of a doctor is not a sufficient excuse for not taking it, particularly since that cost is paid by the E/C, not the claimant, if the claim is compensable." Butch's Concrete v. Henderson, 414 So.2d 652, 654 (Fla. 1st *270 DCA 1982). In this case, however, it appears from the record that claimant's attorney requested the opportunity to take Dr. Beaulieu's deposition testimony post-hearing and that the DC, not claimant's attorney, determined that such testimony was unnecessary and overly costly. It appears that the DC felt the parties should resolve the issue of causation without going to the trouble and expense of deposing Dr. Beaulieu.
But for the discussion that took place at the end of the hearing, we would affirm the DC's finding that claimant did not prove by competent and substantial evidence that his medical problems were related to his industrial injury because no medical testimony was presented in support of causation. However, had the DC allowed the post-hearing deposition of Dr. Beaulieu to be taken, medical testimony of some sort would be present in the record. By implying that the deposition of Dr. Beaulieu was unnecessary for the determination of causation, the DC effectively frustrated claimant's attorney's attempt to depose Dr. Beaulieu post-hearing. Accordingly, we remand this case to the DC to allow the deposition of Dr. Beaulieu to be taken so that, upon its consideration also, the deputy may then make a finding and enter an order on the issue of causation.
REVERSED in part and REMANDED.
MILLS and WIGGINTON, JJ., concur.