774 So.2d 751 (2000)
LOUISIANA PACIFIC CORPORATION, Louisiana Pacific and Gates McDonald, Appellants,
v.
Eddie HARCUS, Appellee.
No. 1D99-1321.
District Court of Appeal of Florida, First District.
November 21, 2000.
*752 Mary L. Wakeman of McConnaughhay, Duffy, Coonrod, Pope & Weaver, P.A., Tallahassee, for Appellants.
Michael J. Valen of Kinsey, Troxel, Johnson and Walborsky, P.A., Pensacola, for Appellee.

ON MOTION FOR CLARIFICATION, REHEARING, REHEARING EN BANC, AND CERTIFICATION
ERVIN, J.
We grant the motion for clarification filed by appellants, Louisiana Pacific Corporation, Louisiana Pacific, and Gates McDonald (the employer/carrier or E/C), to correct the reference to 200-horsepower motors on page 10 of this opinion. We deny all the remaining motions, as they constitute prohibited reargument or disagreement with this court's decision.
The E/C raises two issues in this case: First, that the judge of compensation claims (JCC) erred in deciding that claimant, Eddie Harcus, provided timely notice of his work injury, as required by section 440.185(1), Florida Statutes (1997), and second, in finding that claimant suffered a compensable accident under a repeated trauma theory. As to the latter, the E/C contends that the only competent, substantial evidence (CSE) established that claimant's noncompensable herniated disk combined with his preexisting lateral recess stenosis to cause his disability and need for treatment, and no evidence was presented that the employment was the major contributing cause of same. In that CSE supports the JCC's determination of the first issue, we affirm as to it without further comment. Regarding the second issue, after applying the limited standard of review of CSE, we also affirm, but not for all of the reasons stated by the JCC.
The 49-year-old claimant worked in various positions at the employer's saw mill, most recently as a millwright. Every position he has held during his 24-year career involved arduous physical labor, including heavy lifting on a daily basis. During March 1998, claimant began experiencing pain in his hip and leg. He did not identify any specific incident that caused the pain, but rather referred to many of his job duties that involved heavy physical labor, and he reported that the pain developed gradually. After learning from his family physician that the pain related to a back condition, claimant sought compensation benefits. The E/C completely denied the claim, including the request for medical treatment. On April 29, 1998, claimant *753 came under the care of Dr. Beranek, an orthopedic surgeon, who placed him on no-work status. After testing, physical therapy, and consultation with Dr. Woodham, a neurosurgeon, Dr. Beranek diagnosed lateral recess stenosis with degenerative disk disease and L3-4 herniated disk.
In resolving the claim for compensation benefits, the JCC found the stenosis compensable under a repetitive trauma theory based on claimant's and Dr. Beranek's testimony, and concluded therefrom that claimant's heavy lifting and repetitive bending while working for the employer over the course of more than 20 years caused the stenosis and resultant disability arising in March 1998. He also ruled that the repetitive trauma was the major contributing cause of the stenosis. The JCC concluded, however, that the herniated disk was not compensable, because the doctor's testimony on causation was unsupported by facts established in the record and claimant was unable to pinpoint any event that caused pain relating to the disk.
On appeal, the E/C argues that the JCC erred because the only CSE established that claimant's noncompensable herniated disk, operating in combination with his preexisting lateral recess stenosis, produced claimant's resulting disability. It contends that Dr. Beranek testified that the stenosis was a preexisting condition and that the herniation was caused by a specific event. Beranek, moreover, never identified either condition by itself as the major contributing cause of claimant's leg and back pain; rather, in his opinion, a combination of the two conditions caused the pain. The E/C concludes with the comments that because claimant, as found by the JCC, failed to prove the disk herniation was compensable, and as the medical evidence showed that both conditions caused the disability, claimant could not establish that the stenosis was the major contributing cause of his disability.
We cannot agree for two reasons. First, in our judgment, there was, under the circumstances, no burden on claimant to prove that the stenosis was the major contributing cause of the disability, because section 440.09(1)(b), Florida Statutes (1997), does not apply under the facts of this case. The stenosis is not a preexisting condition within the meaning of section 440.09(1)(b), and there was only one cause, rather than multiple causes, of claimant's disability and need for treatment. Our second reason for rejecting the E/C's argument arises from the CSE review standard. We find that a combination of the evidence, both lay and medical, supports the JCC's determination that the employment caused claimant's disability and need for treatment.
The first error in the E/C's argument is its reliance on section 440.09(1)(b), which provides as follows:
If an injury arising out of and in the course of employment combines with a preexisting disease or condition to cause or prolong disability or need for treatment, the employer must pay compensation or benefits required by this chapter only to the extent that the injury arising out of and in the course of employment is and remains the major contributing cause of the disability or need for treatment.
The above statute is inapplicable, because, in our judgment, this is not a case in which a compensable injury "combine[d] with a preexisting condition to cause or prolong a disability." Id.
While it is clear from Dr. Beranek's testimony that claimant's spinal stenosis preexisted his disability, this does not mean that it was a preexisting condition, as the term is used by the legislature in section 440.09(1)(b). Historically, this expression has been defined to mean something that is personal to the employee, an idiopathic condition which the worker brings to the workplace, i.e., a condition or disease which exists independently of any employment contribution, although it may be later aggravated or accelerated by the employment. For example, the employee *754 in Mangold v. Rainforest Golf Sports Center, 675 So.2d 639 (Fla. 1st DCA 1996), who suffered a fatal heart attack following a work-related leg injury, had a number of preexisting factors, including morbid obesity, ischemic heart disease with a history of prior heart attack, tobacco and alcohol use, accelerated hypertension, hypercholesterolemia, and a family history of myocardial infarction. Benefits were denied because there was no testimony that the workplace injury, rather than the preexisting conditions, was the major contributing cause of the heart attack and resulting death. Apportionment cases provide further insight regarding the personal nature of preexisting injuries, wherein the employer is relieved from the burden of paying compensation for a worker's disability which occurs as a result of the normal progress of the disease and which is unrelated to the accident, under the theory that industry should not be saddled with the cost of compensating employees for conditions that are entirely personal. See Evans v. Florida Indus. Comm'n, 196 So.2d 748, 752-53 (Fla.1967).
In the instant case, it simply cannot be concluded from the evidence that the stenosis, which is itself the compensable injury, "combine[d] with a preexisting condition to cause or prolong disability or need for treatment," as required under section 440.09(1)(b). This conclusion is supported in part by the following excerpt from Dr. Beranek's deposition testimony, which clearly shows that the stenosis is in itself a compensable repetitive trauma injury:
Q. Is that lateral stenosis the type of condition that would come on through a single traumatic occurrence?
A. No, it is not.
Q. Is that something that is more consistent with repetitive year after year activity involving heavy lifting?
A. Heavy lifting and/or repetitive bending.
Q. What is your understanding of what millwright work is?
A. It's a job that requires manual labor, doing a lot of repetitive bending and lifting.
Q. Would it be consistent and reasonable to you to conclude that somebody who performed that type of work over the course of twenty-four years may have this condition you call lateral stenosis?
* * *
A. Absolutely.
We also find section 440.09(1)(b) to be inapplicable, because the evidence in this case shows that there was only one cause, rather than multiple causes, for claimant's disability. The record before us discloses, and the JCC below implicitly found by granting benefits, that the employment-related injury was the only cause of claimant's disability. Because there was only one cause, the burden imposed by the elevated major-contributing-cause standard is inapplicable. As this court observed in Closet Maid v. Sykes, 763 So.2d 377 (Fla. 1st DCA 2000) (en banc), the term "major contributing cause" requires the existence of two or more causes and means that the "workplace accident contributes more to the disability or need for treatment than any other single cause." Id. at 381 (emphasis added).
Although it is true that the JCC found that the major contributing cause of claimant's stenosis was the repetitive work activity, this finding was unnecessary, because it implies that more than one cause combined to bring about the disability. As to the herniated disk, which the E/C claims joined with the preexisting spinal stenosis to cause the disability, the JCC essentially rejected Dr. Beranek's testimony that it was a contributing cause, finding instead that the hypothetical facts on which the physician based his opinion were not supported by the trial testimony. This finding has not been challenged on appeal; accordingly, we do not review the soundness of its ruling. Additionally, it is unclear from the record when the herniated disk occurred. It could have taken place *755 in September or October 1997, when claimant first sought medical care for back pain. The absence of proof as to its occurrence may have motivated the JCC to conclude that the disk herniation was not a cause of the disability arising in March 1998.
We next turn to the question of whether CSE supports the JCC's causation determination. In answering this question, it is necessary to identify the appropriate causation test. Because section 440.09(1)(b) is inapplicable, compensability must be determined solely under section 440.09(1). See Claims Management, Inc. v. Drewno, 727 So.2d 395 (Fla. 1st DCA 1999) (on reh'g). As explained in Drewno, to establish compensability pursuant to section 440.09(1), a claimant must demonstrate he or she suffered "`an accidental injury ... arising out of work performed in the course and the scope of employment.'" Drewno, 727 So.2d at 397 (quoting section 440.09(1)).
To show that an injury arises out of work in a repetitive trauma case, such as this, the claimant is required to prove (1) a prolonged exposure to a condition or activity, (2) the cumulative effect of which is injury or aggravation of a preexisting condition, and (3) that claimant has thereby been subjected to a hazard greater than that to which the general public is exposed. See Festa v. Teleflex, Inc., 382 So.2d 122, 124 (Fla. 1st DCA 1980); Alvarez v. City of Tampa, 647 So.2d 301, 303 (Fla. 1st DCA 1994). Alternatively, the claimant must show a series of occurrences, the cumulative effect of which is injury. See Festa, 382 So.2d at 124. Causation can be established through lay and medical testimony. Id. And see Closet Maid, 763 So.2d at 383 (section 440.09(1) does not alter the long-recognized principle that the cause of a workplace injury may be established by either medical or lay evidence, or both).
Claimant's injury, spinal stenosis, is a classic example of a repeated trauma injury, one which is an exception to the ordinary situation involving injury by accident, where both the cause and the result are sudden. In the typical repetitive trauma model, the disabling condition is one that gradually arises over a protracted period of time, often years, as in the present case. Under this theory, each bump, scratch, strain, jar, irritation, noise, etc., is regarded as an accidental occurrence. Compensation is awarded due to the cumulative effect of a long series of such occurrences leading to the disability or need for treatment. 3 Arthur Larson, Larson's Workers' Compensation Law, § 50.04, at 50-7 & -8 (2000) (hereafter Larson). As this court observed in Alvarez, 647 So.2d at 303:
Proof that the employee was repeatedly exposed to a condition or activity during the course of employment that caused a series of traumas to the employee as a result of which the employee sustained an injury such as shown in this case [disk degeneration], is legally sufficient to support an award of benefits under the repeated trauma theory.
The lay and medical evidence clearly supports the JCC's finding that repetitive trauma arising from claimant's work activity caused his disability. Claimant first went to work at the employer's saw mill during his early twenties when he was symptom-free. He testified that he consistently performed heavy, manual labor over the course of his 24-year employment at the mill. He repeatedly pulled chains weighing 40 pounds, moved logs that were 12 inches in diameter and 20 feet long, stacked lumber in piles and moved them, lifted 50-gallon drums of oil, carried oxygen and acetone bottles weighing up to 60 pounds, pulled levers and cables that were the equivalent of 40 pounds, replaced saws, collars, chipper knives, and edging knives, all of which were heavy, and shoved heavy 200-horsepower motors across metal floors. No evidence was presented that claimant had ever suffered any disabling condition before the compensable injury.
*756 Clearly, the activities which claimant was required to perform during his employment satisfy the repetitive trauma elements of prolonged exposure and a greater hazard than that to which the general public is exposed. Moreover, the testimony of both Dr. Beranek and claimant, as previously set forth, satisfies the second element of the Festa test, as well as the alternative test regarding the cumulative effect of the repetitive activities.
Turning to the dissent's argument that there is no CSE to support the JCC's finding that the stenosis was work-related, we answer that the dissent focuses entirely upon the medical evidence and apparently ignores the abundant lay testimony claimant submitted detailing his employment responsibilities on which Dr. Beranek relied in forming his opinion. The rule has long been established that the resolution of causation issues is within the exclusive province of the judiciarynot the medical professionand may be reached using a combination of medical and lay evidence. See Arand Constr. Co. v. Dyer, 592 So.2d 276 (Fla. 1st DCA 1991); Mallon v. Florida Rock Indus., Inc., 568 So.2d 503 (Fla. 1st DCA 1990); Tampa Bay Moving Sys., Inc. v. Frederick, 433 So.2d 628 (Fla. 1st DCA 1983).
This court's recent en banc decision in Closet Maid illustrates the above rule. The attending physician in Closet Maid opined that the employee's preexisting condition was 75 percent responsible for his disability and need for treatment, and the industrial accident was only 25 percent responsible. Although there was no medical evidence explicitly stating that the major contributing cause of the disability was due to the employment, this court nonetheless concluded that the "evidence ... is sufficient to support a finding of major contributing cause under the standard we have articulated." Closet Maid, 763 So.2d at 378. The case was remanded to the JCC for the limited purpose of applying the newly adopted causation test to the facts. In reaching its decision that the evidence was sufficient, the Closet Maid court relied on the substance of all of the evidence, both medical and lay, particularly the 47-year-old claimant's testimony that he had done manual labor for more than 20 years, including heavy lifting, and that he had not experienced any back pain or disability before his accident. No doubt the Closet Maid opinion was a tacit recognition of the long-established rule that lay testimony "is of probative value in establishing the sequence of events, actual inability or ability to perform work, pain, and similar factors within the actual knowledge and sensory experience of the claimant." McCall v. Dick Burns, Inc., 408 So.2d 787, 792 (Fla. 1st DCA 1982).
As for the dissent's assertion that we read Closet Maid as "overruling" this court's prior case law requiring the presentation of medical evidence in situations involving non-observable injuries, infra at 758, we do not. Clearly, the back injury which claimant Harcus suffered could be only recognized by a medical diagnosis.
Nor do we understand the dissent's reference to the medical testimony presented in Closet Maid, infra at 759, which seems to imply that spinal stenosis is invariably a preexisting, non-work-related condition. The facts in Closet Maid show, however, that it was tried under a different theory from that of repetitive trauma. There the claimant's disabling condition and need for treatment followed a specific industrial accident, and the medical evidence identified claimant's spinal stenosis as a personal, preexisting condition, thus requiring application of the major-contributing-cause-standard.
Professor Larson addressed the comparable problem of proving the compensability of heart-related conditions in the absence of evidence that there was a prior history of heart disease, saying:
Shall it [a court] say that, although there is no evidence in the record of heart disease, it will supply that fact by judicial notice, because the preponderance of *757 medical theory holds that the worker must have had preexisting heart disease? But this may actually contradict the record, which may contain undisputed testimony that the man was healthy and had no previous history of heart disease.
The legal answer is that the determination of preexisting heart disease is one of medical fact in the particular case[.]
2 Larson § 46.03(4), at 46-19 (footnote omitted).
We could also better understand the position of the dissent if another cause unrelated to the workplace existed in the record, which it does not. The dissent, moreover, disregards the somewhat unique nature of repetitive trauma injuries, in which, as stated, the disabling condition does not immediately arise following a single incident, but gradually occurs following a cumulative series of incidents over an extended time frame. Cf. Alvarez v. City of Tampa (disabling disk degeneration caused by repeated trauma for a period of 25 years); Johnson v. Knight, 594 So.2d 836 (Fla. 1st DCA 1992) (claimant suffered disabling back injury under repeated trauma theory resulting from riding long hours in a bouncing, vibrating truck and lifting heavy items within and from the truck).
In conclusion, we deem it instructive to reiterate this court's limited standard of review. As explained a number of years ago in Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983), and more recently in Cumberland Farms, Inc. v. Manning, 685 So.2d 64 (Fla. 1st DCA 1996), we review only whether the record contains CSE to support the JCC's decision. We do not assess whether it is possible to recite contradictory record evidence which supports an argument rejected below; nor do we retry the case and substitute our judgment for that of the JCC on factual matters supported by CSE. Restated, a judge's findings will be sustained if any view of the evidence and its permissible inferences will permit it. See Gomez v. Neckwear, 424 So.2d 106 (Fla. 1st DCA 1982). Although one might, in contravention of this court's long-established review standards, refer to contradictory evidence in isolated portions of the record, a JCC's determination of causation depends on the substance of all of the evidence, rather than on whether a medical witness's testimony explicitly tracks the particular statutory language. See Closet Maid, 763 So.2d at 383.
Because there is CSE to support the JCC's finding that repetitive trauma from claimant's work activity caused his stenosis, and that the stenosis in turn resulted in the disability and/or need for treatment arising in March 1998, the order is
AFFIRMED.
SMITH, LARRY G., Senior Judge, CONCURS. WEBSTER, J., DISSENTS WITH OPINION.
WEBSTER, J., dissenting.
I am unable to agree that the decision of the judge of compensation claims should be affirmed. Because it seems to me that the claimant has failed to meet his burden of persuasion, I would reverse.
It was the claimant's burden to establish the existence of a causal connection between his employment and his alleged injuries. E.g., Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 642 (Fla. 1st DCA 1996) ("[u]nder the 1993 amendments, a claimant has the burden of proving that his initial work-related accident and resulting injury [are] compensable"). The judge of compensation claims found that the claimant had failed to carry that burden as to the herniated disk, and the claimant has not cross-appealed as to that finding. Thus, to prevail on appeal, the claimant must demonstrate that competent, substantial evidence exists in the record to support the finding of the judge of compensation claims that the spinal stenosis was work-related. My review of the record does not reveal any such evidence.
*758 The spinal stenosis was not readily observable. Accordingly, the claimant was obliged to present expert medical evidence establishing a causal connection between the stenosis and his employment. E.g., Wausau Ins. Co. v. Tillman, 765 So.2d 123 (Fla. 1st DCA 2000) (because claimant's alleged internal injuries were not readily observable, he was obliged to present expert medical evidence establishing a causal connection between the alleged injuries and his employment); Ackley v. General Parcel Serv., 646 So.2d 242 (Fla. 1st DCA 1994) (determination of the cause of psychiatric illness is essentially a medical question, requiring expert medical evidence); Crest Products v. Louise, 593 So.2d 1075 (Fla. 1st DCA 1992) (because the claimant's pain in her low back and leg was not the result of any readily observable medical condition, the claimant was obliged to present expert medical evidence establishing a causal connection between her employment and the condition complained of); Peters v. Armellini Express Lines, 527 So.2d 266 (Fla. 1st DCA 1988) (soft tissue injuries are not readily observable and, therefore, expert medical evidence is necessary to establish a causal connection between the claimant's employment and such a condition). As best I can determine from the majority's discussion, it reads our recent opinion in Closet Maid v. Sykes, 763 So.2d 377 (Fla. 1st DCA 2000) (en banc), as overruling these and other similar decisions of this court. Closet Maid did no such thing. On the contrary, it cited such decisions with approval, saying:
We further conclude that section 440.09(1), Florida Statutes (Supp.1994), does not invariably require medical evidence to show that a workplace accident is the major contributing cause of a disability or need for treatment. In some cases, the connection between the accident and the injury may be so clear that it does not require medical proof. For example, in Haas v. Seekell, 538 So.2d 1333 (Fla. 1st DCA 1989), we held that a construction worker who had been struck on the head by a truss was not obligated to present medical evidence that the accident caused organic brain damage. Likewise, we doubt that the legislature intended to require medical evidence of causation in a case in which an employee's arm is severed by a machine at work. Such a requirement would compel a needless presentation of evidence.
In contrast, medical evidence may be essential when the circumstances do not permit causation to be determined on matters which are susceptible of observation or other sensory perception by lay witnesses. This is often the case with injuries which are not readily observable.... We have thus held, for example, that medical evidence was required to show that a workplace accident caused a psychiatric condition, see Ackley v. General Parcel Service, 646 So.2d 242 (Fla. 1st DCA 1994), a soft tissue injury, see Peters v. Armellini Express Lines, 527 So.2d 266 (Fla. 1st DCA 1988), or hypertension. See Handy v. Golden Gem Growers, Inc., 454 So.2d 69 (Fla. 1st DCA 1984). The injuries in those cases required medical proof, presumably because the accompanying events would not support a determination of causation based on matters which the lay witnesses were capable of perceiving and understanding.
This distinction, between situations where medical expertise is essential, and other situations where facts established through lay testimony may establish causation, necessarily depends on the particular circumstances of each case.
Id. at 382-83. This is clearly one of those cases in which, according to Closet Maid, the claimant must present expert medical evidence to establish causation.
The only pertinent medical evidence is found in the deposition of Dr. Beranek, an orthopedic surgeon. Regarding the cause of the spinal stenosis, Dr. Beranek testified that "the long course of lifting [associated *759 with the claimant's job] could have [emphasis added] provided this condition [i.e., the stenosis]," and responded in the affirmative to a question asking whether "the condition ... is completely consistent with the type of work activity that ... [the claimant] has performed repetitively over the course of a twenty-year career with Louisiana Pacific." Dr. Beranek also responded in the affirmative to a question asking whether "it [would] be consistent and reasonable to you to conclude that somebody who performed that type of work over the course of twenty-four years may have [emphasis added] this condition you call lateral stenosis." However, Dr. Beranek was never asked and, therefore, never offered an opinion regarding whether the claimant's employment was responsible for his stenosis. While it may be true that no "magic words" are necessary to meet the "reasonable medical certainty" burden of proof, e.g., Horse Haven v. Willit, 438 So.2d 123, 124 (Fla. 1st DCA 1983), prior to this case we had not reached the point where that standard might be disregarded entirely. Spinal stenosis is not necessarily caused by repeated heavy lifting over many years. See Closet Maid v. Sykes, 763 So.2d 377, 379-80 (Fla. 1st DCA 2000) (en banc) (noting that the claimant had a preexisting non-work-related "medical condition known as spinal stenosis[,] ... a form of arthritis of the spinal canal" which is a congenital and degenerative disease that "usually gets worse with age and deterioration of the spine"). In my opinion, a fair reading of Dr. Beranek's testimony establishes nothing more than a mere possibility that the claimant's stenosis was work-related. Therefore, it is further my opinion that the claimant failed to carry his burden of proof, and that the determination of compensability must be reversed.
The employer and servicing agent also argue that reversal is required pursuant to section 440.09(1)(b), Florida Statutes (1997), because the claimant failed to establish that the spinal stenosis was "the major contributing cause of [his] disability or need for treatment." In fact, as I read Dr. Beranek's testimony, he was of the opinion that, while both the stenosis and the non-compensable disk herniation contributed to the claimant's disability and need for treatment, the latter was "at least fifty-one percent" responsible for and, therefore, was "the major cause" of, the disability and need for treatment. However, I agree with the majority that section 440.09(1)(b) is not applicable because, as presently written, it applies only when a work-related injury "combines with a preexisting disease or condition." Here, there was competent, substantial evidence to support the finding that the stenosis existed before the disk herniation. Therefore, had there been competent, substantial evidence to support the finding that the stenosis was work-related, section 440.09(1)(b) would, by its language, not apply because the work-related injury would have preceded the non-work-related. If, as the employer and servicing agent suggest, the intent behind that section is to preclude compensation whenever an otherwise compensable injury combines with a non-compensable injury or condition unless the former is "the major contributing cause of the disability or need for treatment," then the legislature should consider amending the statute to make that intent clear.
Because I do not find competent, substantial evidence in the record to support the finding that the claimant's spinal stenosis was work-related, I would reverse. Because the majority affirms, respectfully, I dissent.