# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D17-3229
_____

SHARON VARRICCHIO,

   Appellant,

   v.

ST. LUCIE COUNTY CLERK OF
COURTS and ASCENSION
INSURANCE,

   Appellees.

_____

On appeal from an order of the Judge of Compensation Claims.
Keef F. Owens, Judge.

Date of Accident:  September 26, 2013.

April 29, 2019

M.K. THOMAS, J.

Sharon Varricchio ("Claimant") appeals a workers' compensation order denying her claim for temporary disability benefits. We affirm but write to address retroactive assignment of maximum medical improvement ("MMI") and the claim that section 440.13(4)(c), Florida Statutes (2013), allowing ex parte conferences, violates the privacy clause of the Florida Constitution.

## I. Facts

In 2013, the Claimant injured her back moving boxes. The E/C accepted compensability and authorized medical care with two doctors—Drs. McCollom, a neurosurgeon, and Weidenbaum, a pain management physician. Dr. McCollom placed the Claimant at neurosurgical MMI and released her care to Dr. Weidenbaum.

Dr. Weidenbaum performed a lumbar rhizotomy[1] in June 2015. The operative report detailed: "The patient was instructed to call us for follow-up within 2 weeks' time." However, the Claimant did not return to see Dr. Weidenbaum for almost a year. On that return visit, the Claimant reported 100% pain relief following the rhizotomy until approximately two weeks prior to her return. In completing the DWC-25 form,[2] Dr. Weidenbaum indicated that the Claimant had reached MMI but did not specify the specific MMI date in the field provided on the form. However, due to continued pain complaints, the Claimant underwent a second rhizotomy shortly thereafter. She returned for a follow-up visit and reported no relief from the procedure. Dr. Weidenbaum indicated on the DWC-25 form that the Claimant was at MMI but again did not specify a date or address permanent impairment rating.

On November 30, 2016, the Claimant returned to Dr. Weidenbaum and reported no improvement. Physical therapy and medications were prescribed. At this visit, Dr. Weidenbaum fully completed the DWC-25 form to include a specific MMI date to correspond with the date of the visit with a 5% permanent

---

[1] A rhizotomy is a surgical procedure to sever nerve roots in the spinal cord. The procedure effectively relieves chronic back pain and muscle spasms.

[2] Form DFS-F5-DWC-25 ("DWC-25") has been adopted by the Florida Division of Workers' Compensation in Rule 69L-7.602, Florida Administrative Code, as the required reporting form for physicians to recommend medical treatment/services and report the medical status of the injured employee to insurers/employers, including the establishment of MMI and assignment of a permanent impairment rating.

2

impairment rating and no work restrictions. Previously, he had assigned essentially light duty restrictions.

Upon receiving the impairment rating, the E/C began paying permanent impairment benefits ("IBs") pursuant to section 440.15(3), Florida Statutes (2013). The E/C then filed the required DWC-4 form[3] giving notice of the Claimant's change of status and identifying the MMI date as November 30, 2016.

The Claimant filed a petition for benefits (PFB) seeking temporary total disability (TTD) and/or temporary partial disability (TPD) benefits from September 26, 2013, and continuing. The E/C asserted that no TTD/TPD benefits were due as the Claimant had reached MMI, among other defenses.

At deposition, Dr. Weidenbaum testified that the Claimant was likely at MMI after the initial rhizotomy performed on June 10, 2015 and that he would have placed the Claimant at MMI sooner had she, as instructed, returned within a few weeks after the procedure and reported no pain. According to Dr. Weidenbaum, the second rhizotomy would not necessarily change the MMI date as exacerbations of pain are anticipated. He classified the medication and physical therapy as palliative in nature and, therefore, did not affect MMI status. Dr. Weidenbaum identified questionnaires he completed and signed in April and June 2017 (the latter at an ex parte conference with an E/C representative), in which he retroactively assigned the Claimant's MMI date to be June 30, 2015, and that the Claimant was capable of performing her job duties.

The Claimant testified at the merits hearing. She denied ever being advised, orally or in writing, by Dr. Weidenbaum or his staff that she was to return to him two weeks after the rhizotomy. Furthermore, she denied being provided copies of the DWC-25 forms in which Dr. Weidenbaum had placed her at MMI. She

---

[3] Form DFS-F2-DWC-4 ("DWC-4") has been adopted by the Florida Division of Workers' Compensation in Rule 69L-3.025, Florida Administrative Code, as the required reporting form for reporting changes in medical and indemnity status.

learned she was at MMI in November 2016 when the claims adjuster advised her that IBs were being initiated.

Following a merits hearing, the JCC entered a Final Order framing the determinative issue as "the correct MMI date." Because he concluded the Claimant reached MMI on June 30, 2015, the claim for TTD/TPD benefits was denied. The Claimant argues that the JCC erred when he accepted Dr. Weidenbaum's retroactive MMI date of June 30, 2015, thus, precluding an award of TTD/TPD benefits for the claimed time period from November 5, 2015 (date of termination from E/C), through November 30, 2016, the date the Claimant argues she reached MMI.

*II. Analysis*

*Claim for TTD/TPD*

To the extent an issue turns on resolution of the facts, the standard of review is competent, substantial evidence ("CSE"); to the extent it involves an interpretation of law, the standard is *de novo. See Benniefield v. City of Lakeland*, 109 So. 3d 1288, 1290 (Fla. 1st DCA 2013).

In a workers' compensation proceeding, the JCC is the finder of fact who "may accept or reject an expert's testimony, or give it the weight deserved considering the knowledge, skill, experience, training, or education of the witness, the reasons given by the witness for the opinion expressed, and all other evidence in the case." *White v. Bass Pro Outdoor World, LP*, 16 So. 3d 992, 994 (Fla. 1st DCA 2009). This Court does not substitute its judgment for that of the JCC on matters supported by CSE. *See Louisiana Pacific Corp. v. Harcus*, 774 So. 2d 751, 757 (Fla. 1st DCA 2000).

The question of whether a claimant has reached MMI is a medical question that should be answered by medical experts. *Lemmer v. Urban Elec., Inc.*, 947 So. 2d 1196, 1198 (Fla. 1st DCA 2007). However, a JCC's reliance on a physician's opinion must be supported by the substance of that doctor's medical testimony and not merely by the doctor's conclusion. *Id.*

4

Although the JCC acknowledged that Dr. Weidenbaum had suggested several MMI dates, he ultimately accepted Dr. Weidenbaum's rationale for assigning the June 30, 2015, MMI date. The JCC acted within his discretion, and the only medical evidence before him related to the date of pain management MMI was from Dr. Weidenbaum. In the Final Order, the JCC stated:

> It must be noted that there is no medical opinion regarding claimant's MMI date other than that provided by Dr. Weidenbaum (with exception of Dr. McCollum's opinion that the claimant previously reached MMI April 20, 2015). This evidence is solely presented via Dr. Weidenbaum's office notes, forms, and testimony.

On appeal, the Claimant argues that the JCC's acceptance of the June 30, 2015, MMI date constitutes error because Dr. Weidenbaum did not examine the Claimant on that day. As authority, the Claimant cites *Peterson v. Georgia-Pacific Corporation*, 510 So. 2d 1015 (Fla. 1st DCA 1987). However, *Peterson* is readily distinguishable as its holding was not that a doctor must have actually examined a patient on the date assigned for MMI or restrictions; instead, *Peterson* expresses only that there must be an evidentiary foundation to support such an assignment or the finding cannot be supported by CSE. *Id.* at 1018. Here, the only medical evidence before the JCC regarding MMI was that of Dr. Weidenbaum. As CSE exists to support the JCC's determination, we are constrained to affirm. *See Harcus*, 774 So. 2d at 757.

The Claimant relies on this Court's prior decisions in *Delgado v. Omni Hotel*, 643 So. 2d 1185, 1187 (Fla. 1st DCA 1994), *Utley-James, Inc. v. Lady*, 448 So. 2d 1191, 1193 (Fla. 1st DCA 1984), and *Rolle v. Picadilly Cafeteria*, 573 So. 2d 94, 97 (Fla. 1st DCA 1991), for the proposition that the MMI assignment of June 2015 is precluded because she continued to receive medical care with an expectation of some degree of further recovery. Again, the only medical evidence before the JCC regarding the pain management treatment and MMI was that of Dr. Weidenbaum who testified that all care after the initial rhizotomy was palliative in nature.

5

The Claimant also argues that this case is "eerily similar" to *Gauthier v. Florida International University*, 38 So. 3d 221 (Fla. 1st DCA 2010). She argues that the E/C's failure to confirm MMI and acquire a permanent impairment rating prior to November of 2016 precludes her acquisition of the benefits requested. To the extent that the Claimant seeks a broad expansion of the doctrine of equitable estoppel, her reliance on *Gauthier* is unpersuasive. To demonstrate estoppel, the Claimant must establish that: (1) the E/C misrepresented a material fact; (2) the Claimant relied on the misrepresentation; and (3) the Claimant changed her position to her detriment because of the misrepresentation. *See, e.g., Deere v. Sarasota Cty. Sch. Bd.*, 880 So. 2d 825, 826 (Fla. 1st DCA 2004). We acknowledge that estoppel may be a viable bar to retroactive assignment of MMI or work restrictions under certain facts. However, as the Claimant here did not satisfy the required elements of estoppel or demonstrate supporting facts, her argument fails.

*Constitutional Right to Privacy*

The attorney for the E/C had a one-on-one meeting with Dr. Weidenbaum shortly before he completed the April 2017 questionnaire specifying the MMI date of June 30, 2015. The Claimant contends that section 440.13(4)(c)—the statutory provision giving the E/C the right to discuss Claimant's medical condition with her doctors, outside of her presence and without prior notice—violates her constitutional right to privacy.

Our review of constitutional claims is *de novo. See Medina v. Gulf Coast Linen Servs.*, 825 So. 2d 1018, 1020 (Fla. 1st DCA 2002). Under Article I, Section 23 of the Florida Constitution, "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein." The right to privacy is a fundamental right, *see Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation*, 477 So. 2d 544, 547 (Fla. 1985), but there must first be evidence of a "legitimate" expectation of privacy, considering all the circumstances. *See S & A Plumbing v. Kimes*, 756 So. 2d 1037, 1041 (Fla. 1st DCA 2000) (citing *City of N. Miami v. Kurtz*, 653 So. 2d 1025, 1028 (Fla. 1995)).

Here, no legitimate expectation of privacy can be asserted. *See Kimes*, 756 So. 2d at 1041. In *Kimes*, this Court expressly held that section 440.13(4)(c) does not violate Florida's constitutional right to privacy. 756 So. 2d at 1041. The Claimant suggests that *Kimes* no longer controls the constitutional question here in light of the supreme court's decision in *Weaver v. Myers,* 229 So. 3d 1118 (Fla. 2017), and the 2003 amendments to section 440.13(4)(c). In *Weaver*, the supreme court held that certain amendments to the medical malpractice law, which required the release of medical records and permitted *ex parte* secret interviews with medical providers, violated the appellant's right to privacy. *Id*. at 1141-42 ("Here, the constitutional protection operates in the specific context of shielding irrelevant, protected medical history and other private information from the medical malpractice litigation process."). But the *Weaver* court distinguished *Kimes*, cited by way of analogy, on two grounds: first, that workers' compensation, as a self-executing system, is substantially different from the adversarial and traditional actions in tort; and second, that "the only medical professional to be interviewed was explicitly hired for the purposes of workers' compensation to evaluate the causal connection between the work performed and the injury." *Id*. at 1138.

The Claimant contends that the second distinction, noted in *dicta* in *Weaver*, is an acknowledgement by the supreme court that the *Kimes* decision turned on an injured worker's lack of an expectation of privacy with regard to only those physicians authorized to treat under workers' compensation law. The Claimant argues that section 440.13(4)(c) was substantially amended in 2003 and these amendments expand the scope of the law to permit E/Cs to obtain records from, and secretly meet with, all physicians, not just those authorized to treat workplace injuries. But this statutory change has had no effect on the Claimant, whose position is identical to that of the claimant in *Kimes*—exclusion from an *ex parte* meeting between the authorized treating physician and the E/C's representative, where the discussion was limited to the workplace injury.

As a consequence, the Claimant has not demonstrated injury that is anything more than conjecture. And, because Claimant has provided no support in the record that the recent amendments to

7

section 440.13(4)(c) violate her right to privacy causing "'an injury which is both real and immediate, not conjectural or hypothetical,'" her constitutional challenge must also fail. *See Punsky v. Clay Cty. Bd. of Cty. Comm'rs*, 60 So. 3d 1088, 1092 (Fla. 1st DCA 2011) (holding claimant's constitutional argument must fail where evidence fails to show real and immediate injury) (quoting *Montgomery v. Dep't of Health & Rehab. Servs.*, 468 So. 2d 1014, 1016 (Fla. 1st DCA 1985)). Accordingly, we find that section 440.13(4)(c), as amended, does not violate the constitutional right to privacy.

AFFIRMED.

B.L. THOMAS, C.J., and ROWE, J., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Mark L. Zientz of Law Offices of Mark L. Zientz, P.A., Miami, for Appellant.

Gary M. Schloss of Hayes, Schloss & Alcocer, P.A., West Palm Beach, for Appellees.