WENTWORTH, Judge.
The employer/carrier appeal an order of the deputy commissioner authorizing a psychiatric evaluation and awarding attorney’s fees. We affirm.
Claimant was injured in a compensable accident on January 8, 1981, when he was hit in the forehead with a lead pipe. He suffered a frontal sinus fracture which required surgery to remove the fractured bone and the contents of the sinus. Fat was removed from claimant’s abdomen and inserted into the sinus area in an attempt to prevent facial deformity. The bone fragments were then wired back into their original position. On March 23, 1981 claimant sought authorization to be seen by a dentist, and on April 16, 1981 he sought authorization for a plastic surgeon and a neurologist. A hearing was set for May 14, 1981 on these requests, but on May 12, 1981 the additional medical care was authorized.
Later claimant returned home to southern Alabama and on July 13,1981 requested a doctor in the Pensacola area. This request was also denied, and at the same time the employer/carrier cut off claimant’s temporary total disability benefits. The claimant then went to Dr. Chicóla on his own. Dr. Chicóla performed exploratory surgery on July 14, 1981, which revealed that the abdominal tissue which had been implanted in the sinus area had become infected. On July 17, 1981, Dr. Chicóla performed a sinus ablation: a complete elimination of the sinus with no attempt at reconstruction. As a result, claimant was left with a collapsed forehead. Dr. Chicóla indicated that it could be years before he could recommend attempted correction of the deformity by plastic surgery. He testified that whenever the correction was attempted, there could be complications, and follow up treatment “at least for a few years” would be necessary.
On July 27, 1981 claimant’s attorney sought reinstatement of temporary total disability benefits and again requested additional medical treatment, this time specif *1010 ically requesting authorization of Dr. Chicó-la. Authorization was not granted, and a hearing was set for October 5, 1981. The employer/carrier also set Dr. Chicola’s deposition for October 1, 1981, but on September 16, Dr. Chicóla was authorized, temporary total disability was reinstated, and the October 15 hearing was then cancelled.
On November 19, 1981 claimant’s attorney sought authorization for a psychiatric evaluation.[1] Once again the claim was denied, and a hearing was held on January 20, 1981. At the hearing, claimant’s attorney introduced a medical report of Dr. Robert, a neurosurgeon who had been involved in claimant’s initial treatment and who was authorized by the employer/carrier.[2] The report contains the following comment:
There appears to be considerable emotional overlay which may well be the reason for the persistence of his symptoms.
The attorney for the employer/carrier objected to admission of the report on grounds of hearsay. The deputy agreed that the report was hearsay but admitted it with the explanation that there was no doubt about its authenticity; that the general reasons for sustaining objections to hearsay were not present in this case; and that a deposition [3] would involve an extraordinary burden in the particular circumstances presented. The deputy ordered the psychiatric evaluation and awarded attorney’s fees based on a finding of bad faith. § 440.-34(3)(b), Florida Statutes (1981).
In Butch’s Concrete v. Henderson, 414 So.2d 652 (Fla. 1st DCA 1982), we reversed the admission of unauthenticated medical reports, which had been admitted for reasons similar in part to those expressed by the order now on appeal. We find that reversal is not appropriate in this case, however, for two reasons. First, the report here does not fall within the statutory definition of hearsay[4] because it was not offered to prove the truth of the matter asserted. The matter asserted was an orthopedist’s opinion that claimant had an emotional overlay. The report was offered only to prove that there was reason to authorize an evaluation to determine if claimant had a psychiatric condition, and if so, to determine its cause. The unauthenticated medical report therefore was not, under the circumstances described, excludable as hearsay.
Affirmance is also proper because the opinion of Dr. Robert was adopted verbatim by Dr. Chicóla in his deposition.[5] Thus, the evidence was strictly cumulative so that, even assuming error in its admission, such error was harmless. Ocala Veterinary Hospital v. Scardo, IRC Order 2-3630 (1978). In addition to agreeing with Dr. Robert’s quoted opinion, Dr. Chicóla testified that he knew that claimant was depressed and anxious concerning his deformity, that he had told claimant that correction would be risky, and that possibly.it would never be successful. Therefore, in spite of Dr. Chicola’s statement that he did not consider the evaluation necessary, there is competent substantial evidence supporting the finding of entitlement to such diagnostic care.
The recited facts support the deputy’s determination of bad faith in the handling of the claim.
The order is accordingly affirmed.
BOOTH, J., concurs.
THOMPSON, J., dissents with opinion.

. The claim was for examination only, not for treatment.

. Thus, the employer/carrier had possession of the report prior to the hearing, the report being dated June 18, 1981.

. Dr. Robert was located in the Orlando area where the accident occurred. As mentioned, claimant was residing in southern Alabama at the time of the hearing.

.§ 90.801(l)(c), Florida Statutes (1981).

. In finding claimant entitled to an evaluation the deputy stated that he had accepted the medical testimony of Dr. Robert over Dr. Chi-cóla. We construe this statement as referring to those areas where Dr. Chicola’s testimony conflicted with Dr. Robert.