ROBERTS, J.
 

 In this workers’ compensation appeal, Claimant challenges an order of the Judge of Compensation Claims (JCC) denying compensability of his claim. Specifically, Claimant asserts the JCC erred in 1) accepting the opinions of a toxicologist who was not an independent medical examiner, expert medical advisor or authorized treating provider; 2) rejecting the opinions of the expert medical advisor; and 3) denying his claim for attorney’s fees and costs. For the reasons explained below, we reverse the JCC’s order.
 

 Background
 

 In April 2008, the Employer hired Claimant as an outdoor laborer. On April 12, 2008, Claimant arrived at his assigned jobsite at 7:00 a.m. and, at approximately 2:30 p.m., while nailing a piece of wood to a bridge, Claimant collapsed and fell to the ground. Claimants co-workers took him to Palm Beach County Fire Rescue where EMTs diagnosed Claimant with possible heatstroke and took him to Glades General Hospital. Claimants admitting diagnoses at the hospital were hyperthermia, heatstroke, and respiratory failure. Claimant was examined by various physicians and was eventually discharged from the hospital on May 16, 2008. Claimant was thereafter transferred to multiple nursing homes and rehabilitation centers for continued care.
 

 Claimants medical history reveals a lengthy history of alcohol abuse and alcohol-related accidents including multiple diagnoses of chronic alcoholism and alcohol dependence. Claimants medical records indicate that Claimants girlfriend told the staff at the hospital that he had been drinking 12-24 beers three times per week, taking Zanax for anxiety, and smoking three packs of cigarettes per day. Claimant testified, however, that he had not consumed alcohol in the three months preceding the accident. Claimant passed an employment drug test on April 10, 2008, prior to being hired by the Employer, and there was no alcohol in Claimants system on the date of the accident.
 

 Between August 6, 2008, and December 26, 2008, Claimant filed multiple petitions for benefits seeking, in relevant part, com-pensability of the April 12, 2008, accident and resulting injuries; catastrophic temporary total disability benefits beginning April 12, 2008, and continuing; authoriza
 
 *107
 
 tion and payment of various outstanding medical bills; and penalties, interests, costs, and attorneys fees. The Employer/Carrier (E/C) denied the claim entirely, arguing, in relevant part, that Claimants condition is personal in nature, that his employment is not the major contributing cause (MCC) of his condition, that Claimants condition is the by-product of long-term alcoholism, drug abuse, tobacco use, and other disease processes having nothing to do with his employment, and that the claim is barred pursuant to section 440.02(1), Florida Statutes (2007), as an accidental acceleration or aggravation of a disease due to the habitual use of alcohol.
 

 Both parties exercised their right to independent medical examinations (IMEs). Claimant’s independent medical examiner, Dr. Morariu, diagnosed Claimant with encephalopathy caused by heatstroke. Dr. Morariu opined Claimant’s collapse was caused by heatstroke, which was 51% or more responsible for his need for treatment. The E/C’s independent medical examiner, Dr. Ross, opined Claimant suffered from chronic alcoholism with acute withdrawal and alcoholic hepatitis, which led to hyperthermia, Wernicke-Korsakoff s Syndrome, and systematic collapse. Dr. Ross further opined that Claimant’s alcoholism, not his work activities, was the MCC of his collapse and resulting injuries.
 

 Due to the conflict in the IME physicians’ testimonies, the JCC appointed Dr. Weiss to serve as expert medical advisor (EMA). After examining Claimant, Dr. Weiss diagnosed Claimant with encephalopathy caused by heatstroke. Dr. Weiss opined that the MCC of Claimant’s collapse was heatstroke and that the heatstroke was a direct result of Claimant’s employment. Dr. Weiss opined there was no objective evidence Claimant’s condition was caused by the use of alcohol or the aggravation or acceleration of alcoholism.
 

 At the request of the E/C, Raymond Harbison, Ph.D, reviewed Claimant’s medical records and issued a report concerning the cause of Claimant’s condition. Dr. Harbison is a toxicologist, but not a medical doctor. Dr. Harbison opined that Dr. Morariu’s opinion was not consistent with the medical evidence or toxicology results and that there was no evidence that Claimant was exposed to harmful workplace temperatures sufficient to cause heatstroke. Dr. Harbison further opined, over Claimant’s objection, that Claimant’s April 12 incident was caused by the acceleration or aggravation of his long-term alcoholism and not exertional heatstroke.
 

 At a hearing before the JCC, the depositions of Doctors Morariu, Ross, Weiss, and Harbison were entered into evidence. Additionally, Doctors Ross and Harbison testified live before the JCC. At the hearing, the E/C elicited testimony from Doctors Ross and Harbison concerning the flaws in Dr. Weiss’s diagnoses and argued their testimony constituted clear and convincing evidence contradicting the opinions of Dr. Weiss, the EMA. Claimant objected to the opinions of Dr. Harbison on the basis that he was not qualified to render an opinion on medical causation and urged the JCC to accept the opinions of Dr. Weiss.
 

 The JCC denied compensability of Claimant’s April 12, 2008, accident, finding the record contained clear and convincing evidence to dispute the presumptive correctness of Dr. Weiss’s expert opinion. Significantly, the JCC found there was “clear and convincing evidence from the testimony of Dr. Ross and Dr. Harbison to refute the testimony of Dr. Weiss on causation.” Ultimately, the JCC determined the MCC of Claimants April 12 incident and injuries was long-term alcoholism, not heatstroke. She further found Claimants injury barred pursuant to section 440.02, Florida Statutes, due to the accidental acceleration or
 
 *108
 
 aggravation due to the habitual use of alcohol.
 

 On appeal, Claimant argues the JCC erroneously relied on the testimony of Dr. Harbison in reaching the conclusion that Claimants collapse was caused by his preexisting alcoholism. The E/C argues Dr. Harbisons opinions were rendered solely from a scientific, toxicological standpoint and were properly confined to his specialty and training. Alternatively, the E/C argues any error in the admission of Dr. Harbisons testimony was harmless because competent, substantial evidence (CSE) otherwise supports the JCCs finding as to the cause of Claimants collapse. We agree with Claimant and reverse.
 

 Analysis
 

 Section 440.09(1), Florida Statutes (2007), provides in relevant part:
 

 The injury,
 
 its occupational cause,
 
 and any resulting manifestations or disability must be established to a reasonable degree of
 
 medical
 
 certainty, based on objective relevant
 
 medical
 
 findings, and the accidental compensable injury must be the [MCC] of any resulting injuries. ... For purposes of this section, “objective relevant medical findings” are those objective findings that correlate to the subjective complaints of the injured employee and are confirmed by physical examination findings or diagnostic testing. Establishment of the causal relationship between a compensable accident and injuries for conditions that are not readily observable
 
 must be by medical evidence only,
 
 as demonstrated by physical examination findings or diagnostic testing. [MCC]
 
 must
 
 be demonstrated by
 
 medical evidence only.
 

 (Emphasis added.) Additionally, section 440.13(5)(e), Florida Statutes (2007), provides that “[n]o
 
 medical
 
 opinion other than the opinion of a medical advisor appointed by the [JCC] or the department, an independent medical examiner, or an authorized treating provider is admissible in proceedings before the [JCC].” (Emphasis added.).
 

 A plain reading of these statutes indicates that medical causation must be established by medical testimony only.
 
 See also Turner v. G. Pierce Wood Mem’l Hosp.,
 
 600 So.2d 1153 (Fla. 1st DCA 1992) (holding determination of non-observable medical condition is essentially a medical question);
 
 Thomas v. Salvation Army,
 
 562 So.2d 746 (Fla. 1st DCA 1990) (holding medical evidence is prerequisite to finding causation within reasonable medical probability where claimant’s injury is not readily observable).
 

 The primary issue in this case is the cause of Claimant’s April 12 collapse and resulting medical conditions. Contrary to the E/C’s argument, Dr. Harbison did, on multiple occasions and over Claimant’s objection, provide an opinion as to this precise medical issue. Significantly, Dr. Har-bison attested to his belief that Claimant’s accident was caused by chronic alcoholism, not exertional heatstroke. Additionally, Dr. Harbison provided an opinion as to the initial findings and diagnoses from Glades General Hospital and indicated his opinions were within a reasonable degree of medical certainty.
 

 It is undisputed, however, that Dr. Harbison is a toxicologist, not a medical doctor. Accordingly, although Dr. Harbi-son’s testimony was admissible with respect to scientific methods and principles, alcohol abuse, and the consequences of long-term alcoholism, his opinion as to the medical cause of Claimant’s April 12 incident and injuries specifically was not. Because Dr. Harbison is not a medical doctor, he was not qualified to testify as to the medical cause of Claimant’s condition in this particular case.
 
 See
 
 §§ 440.09(1) &
 
 *109
 
 440.13(5)(e), Fla. Stat. (2007). Therefore, the JCC erred to the extent she accepted and relied on Dr. Harbison’s opinions regarding the specific cause of Claimant’s incident and resulting injuries.
 

 Notwithstanding the foregoing error, the E/C urges us to affirm the JCC’s order. Reasoning that Dr. Harbison’s opinions were entirely consistent with those of Dr. Ross and that CSE supports the JCC’s ruling notwithstanding the exclusion of Dr. Harbison’s testimony, the E/C argues the JCC’s reliance on the inadmissible testimony was harmless. We disagree.
 

 The test for harmless error in a civil case is “whether, but for such error, a different result may have been reached.”
 
 White Constr. Co., v. Dupont,
 
 455 So.2d 1026 (Fla.1984);
 
 see also Nat’l Union Fire Ins. Co. of Pittsburgh v. Blackmon,
 
 754 So.2d 840 (Fla. 1st DCA 2000). This test is applicable to workers’ compensation appeals.
 
 See, e.g., Sanlando Util. Corp. v. Morris,
 
 418 So.2d 389 (Fla. 1st DCA 1982) (holding deputy commissioner’s error in considering inadmissible evidence was harmful where, but for the error, a different result may have been reached).
 

 An error in the introduction of evidence may be considered harmless if the evidence is merely cumulative to other evidence that was properly introduced.
 
 See Dupont,
 
 455 So.2d at 1029 (holding that error in allowing evidence of subsequent repairs in negligence case was harmless because there was enough independent evidence of negligence to make inadmissible evidence “merely cumulative”);
 
 Foster’s Auto Crushing v. Wood,
 
 427 So.2d 1009 (Fla. 1st DCA 1983) (holding any error, in workers’ compensation proceeding, in admitting hearsay medical report was harmless where evidence was “strictly cumulative”).
 

 When considered in conjunction with the underlying harmless error test, however, “cumulative evidence” means unnecessary evidence — evidence so repetitive that, notwithstanding its exclusion, it is not reasonably likely a different result would have occurred.
 
 See Blackmon,
 
 754 So.2d at 843 (holding admission of hearsay statement was harmless error where statement was cumulative and, given other evidence of tortfeasor’s liability, there was no reasonable possibility that the error contributed to jury’s verdict). The cases concerning cumulative evidence do not stand for the proposition that an error in the admission of evidence is harmless simply because there is additional admissible evidence in the record to support the ultimate result below.
 
 See, e.g., Crawford & Co. v. Baxla,
 
 746 So.2d 576, 577 (Fla. 1st DCA 1999) (holding JCC’s error in admitting and relying upon inadmissible medical testimony was harmless where JCC also relied upon testimony of authorized IME, which essentially mirrored improperly admitted testimony, but explaining affir-mance under such facts “should be viewed as a rare exception” and noting, in the future, such erroneous admissions will likely result in reversal). Because in a vast majority of workers’ compensation cases the record on appeal contains CSE in support of both sides, a JCC’s reliance on inadmissible evidence will almost always be deemed harmless if the degree of harm is measured by the existence of CSE supporting the result reached by the JCC. Therefore, a JCC’s reliance on inadmissible expert testimony is not harmless solely because CSE otherwise supports the JCC’s findings.
 

 The Florida Supreme Court has held, under a civil harmless error analysis, that an error in the admission of expert testimony is harmful where the case turns on the weight of expert testimony.
 
 See
 
 
 *110
 

 Linn v. Fossum,
 
 946 So.2d 1032, 1041 (Fla.2007) (holding trial court’s error in admission of expert testimony was not harmless where competing expert opinions were the focal point of the trial). Accordingly, where expert testimony as to a particular issue is the focal point of the trial, the erroneous admission of expert evidence constitutes harmful error.
 

 Here, as in
 
 Linn,
 
 the case turns on the weight of expert testimony; specifically, whether Claimant’s collapse was the result of heatstroke or chronic alcoholism. The JCC’s ultimate finding as to causation was based on both the inadmissible testimony of the toxicologist and the admissible medical testimony of Dr. Ross, the E/C’s IME physician. On the basis of these two expert opinions, the JCC found clear and convincing evidence to rebut the presumed correctness of the EMA’s opinion.
 
 See
 
 § 440.13(9)(c), Fla. Stat. (2007) (stating that opinion of EMA is presumed correct unless there is clear and convincing evidence to the contrary as determined by JCC). Here, the JCC may have reached a different result if she had relied only on the admissible evidence. From the order, it cannot be determined whether the JCC would have found Dr. Ross’s testimony alone constituted clear and convincing evidence sufficient to rebut the opinion of the EMA.
 
 Cf. U.S. Agri-Chem. Corp. v. Camacho,
 
 975 So.2d 1219 (Fla. 1st DCA 2008) (holding that JCC’s error in accepting expert testimony was harmless because JCC specifically stated he would have reached the same result without the inadmissible expert opinion);
 
 Oriente Express Inn v. Rodriguez,
 
 406 So.2d 55 (Fla. 1st DCA 1981) (holding order’s recitation of medical report not in evidence was harmless where neither record nor face of the order indicate that report had any significant bearing on deputy’s conclusions).
 

 Because the competing expert opinions as to the cause of Claimant’s collapse were the focal point of the final hearing and because the JCC expressly relied on the inadmissible opinions in reaching her conclusion, the JCC’s erroneous admission of expert testimony was harmful error.
 
 Linn,
 
 946 So.2d at 1041;
 
 see also Johns E. Co. v. Matta, 717
 
 So.2d 91 (Fla. 1st DCA 1998) (holding JCC’s erroneous admission of physician’s testimony was not harmless where physician provided important testimony establishing causal relationship between claimant’s accident and resulting injury). Therefore, the ease is REVERSED and REMANDED to the JCC for reconsideration without reliance upon Dr. Har-bison’s opinions as to medical causation.
 

 WOLF and ROWE, JJ., concur.