PER CURIAM.
In this workers’ compensation case, Claimant, the surviving spouse of an injured and now-deceased worker, challenges an order of the Judge of Compensation Claims (JCC) that denies death benefits claimed under section 440.16(l)(a)-(b), Florida Statutes (2006). Claimant argues the JCC erred in admitting and relying upon the opinion of a non-physician toxicologist in determining issues of medical causation, and by concluding that the opinion testimony of two pathologists (medical doctors) was insufficient “as a matter of law” to establish the cause of the worker’s death. We agree and reverse.
Background
As a result of a compensable accident and injury, Michael Stokes underwent an authorized ankle surgery, after which his surgical incisions did not heal. Notwithstanding the administration of professional wound care and a course of strong antibiotics, Stokes’ wounds became swollen, pus-filled, odorous, and inflamed. While under the care of a wound-care nurse, Stokes became febrile, collapsed, and died. An autopsy performed by the county medical examiner revealed visible colonies of coc-coid bacteria which had formed in Stokes’ heart, causing acute inflammation of the heart tissues, the presence of which was preserved on slides and confirmed by microscopic inspection. A post-mortem examination of Stokes’ body, performed by a pathologist, revealed marked redness and swelling around the oozing surgical wounds, but, despite a full autopsy, no other source of infection was located. The medical examiner, having ruled out all other possible causes of death and sources of infection, officially concluded that the cause of Stokes’ death was the acute bacterial infection in the heart, caused by bacterial infection resulting from the ankle surgery. After the cause of death was certified for official purposes, Stokes’ body was cremated.
Claimant filed a petition for death and funeral benefits under the Workers’ Compensation Law. The employer/carrier (E/C) denied the claim on the basis that Stokes’ death was not caused by the ankle infection, and on the additional grounds that Claimant was not substantially depen *1112 dent on Stokes. The doctor who performed the autopsy (a pathologist), and a pathologist who performed an independent medical examination (IME) on Claimant’s behalf (both medical doctors whose opinions were admissible before the JCC), testified that based on their experience, education, and training, and examination of the existing evidence, the cause of Stokes’ death, within a reasonable degree of medical certainty, was infectious endocarditis caused by the ankle infection.
The E/C did not introduce medical evidence supporting its theory that Stokes’ death was not caused by the ankle infection. Rather, it retained a non-physician toxicologist who testified that Stokes could have died from other causes, and that one could not scientifically determine the cause of death without culturing the ankle wound to match the bacteria in the ankle and the heart, or identifying epidemiologic studies linking ankle wounds to endocarditis— propositions which were soundly refuted by the medical experts, and enjoyed no other support in the record. The JCC although cautioning that she would not consider medical opinions expressed by the toxicologist — sustaining Claimant’s objection in this regard — denied death benefits “as a matter of law,” because no culture was taken of Claimant’s ankle wound and because no epidemiological studies were produced establishing a causal relationship between ankle wounds and endocarditis.
Analysis
In reaching her conclusion regarding the legal (in)sufficieney of the pathologists’ testimony, the JCC of necessity adopted or accepted the toxicologist’s opinion on issues of medical causation upon which he was not qualified to testify under the Workers’ Compensation Law. See § 440.13(5)(e), Fla. Stat. (2007) (stating no medical opinion other than an authorized treating provider, an IME, or an expert medical advisor is admissible in proceedings before the JCC); see also § 440.09(1), Fla. Stat. (2007) (providing occupational causation must be established to a reasonable degree of medical certainty and demonstrated by medical evidence only). This court has recently held that a JCC may not rely upon the opinion of a Ph.D. toxicologist — a non-physician — in determining medical causation under the Workers’ Compensation Law. See Witham v. Sheehan Pipeline Constr. Co., 45 So.3d 105, 108-109 (Fla. 1st DCA 2010) (“Because Dr. Harbison is not a medical doctor, he was not qualified to testify as to the medical cause of Claimant’s condition in this particular case.”). Here, the essence of the toxicologist’s testimony was that, absent a culture from the ankle wound, one could not be absolutely certain that the bacteria found clumped in Stokes’ heart in fact entered through the ankle wound. Nevertheless, Claimant was not charged with the duty of proving beyond any question and to all degrees of certainty that Stokes’ fatal infection resulted from the ankle wound, as was seemingly concluded by the JCC; rather, she had the obligation of proving this was so within a reasonable degree of medical certainty — not absolute certainty, or the reasonable degree of certainty exacted by some other unspecified field of science. See § 440.09(1), Fla. Stat. (2005); see generally Castillo v. E.I. Du Pont De Nemours & Co., 854 So.2d 1264, 1276 (Fla.2003) (explaining under circumstances where evidence of Benlate exposure was equivocal, plaintiffs did not have to “establish” that Benlate was sprayed; rather, “they need only present the greater weight of the evidence [the applicable burden of persuasion] that it was”). The Workers’ Compensation Law requires that occupational causation be established within a reasonable degree of medical certainty and by medical evidence only. Accordingly, the JCC erred in relying on the non-physician toxicologist’s (non-medical) testi *1113 mony as to other possible causes of Stokes’ death, and by accepting his opinion regarding the protocols, testing, and the degree of certainty used in the medical community to determine the cause of death. Moreover, the JCC’s conclusions that the medical experts’ opinions were legally infirm because of the lack of epidemiological studies linking endocarditis to ankle wounds, and her conclusion that no evidence established that the fatal heart infection stemmed from the ankle wound, misapprehends the use of expert opinion testimony in Florida courts. See U.S. Sugar Corp. v. Henson, 823 So.2d 104, 109 (Fla.2002) (stating when expert’s opinion is based upon generally accepted scientific principles and methodology reasonably relied upon by experts in relevant field of expertise, it is not necessary that expert’s deductions based thereon and opinion also be generally accepted as well). Here, the pathologists’ expert opinion testimony was evidence demonstrating causation, from which the JCC could conclude a sufficient causal relationship, established within a reasonable degree of medical certainty, as required by the Workers’ Compensation Law. See § 90.702, Fla. Stat. (providing qualified expert witness may testify in form of opinion); see also § 90.703, Fla. Stat. (providing expert testimony in form of opinion or inference is not objectionable because it includes an ultimate issue to be decided by trier of fact).
Accordingly, we REVERSE and REMAND for the JCC to make those findings of fact necessary to determine Claimant’s entitlement, if any, to benefits, without reliance on the opinion testimony of the non-physician toxicologist. We do not address the E/C’s ill-suited attempt to reverse the JCC’s factual findings regarding Claimant’s dependency, because the request for the affirmative relief of reversal by the E/C through its Answer Brief is improper. On remand, however, the JCC shall make ultimate conclusions and findings regarding Claimant’s dependency.
WOLF and ROWE, JJ., concur; THOMAS, J., concurs with opinion.